[Crim. No. 11.    Third Appellate District.—November 27, 1905.]

THE PEOPLE, Respondent, v. AH LUNG, Appellant.

CRIMINAL LAW—CHARGE OF RAPE UPON YOUNG GIRL—VERDICT FOR AT-
    TEMPT.—By the terms of section 1159 of the Penal Code, every in-
    formation charging a public offense includes an attempt to commit
    the crime charged; and under an information charging the defend-
    ant with the crime of rape upon a female under the age of sixteen
    years, a verdict may be rendered convicting the defendant of an at-
    tempt to commit rape, though it be not charged that the rape was
    accomplished by force and violence and against the will of the
    female.

ID.—EVIDENCE—CORROBORATION OF PROSECUTRIX.—Upon trial of such a
    charge, there is no absolute rule requiring corroboration of the tes-
    timony of the prosecutrix, and corroborative evidence need not tend
    directly to connect the defendant with the offense charged; and
    though the testimony of the prosecutrix be contradictory, and the
    corroboration slight, appellate courts will not interfere, unless the
    preponderance of evidence against the verdict makes reversal a duty.

ID.—EVIDENCE OF PENETRATION—RUPTURED HYMEN.—Though penetra-
    tion is not an element of the crime of which defendant was con-
    victed, the testimony of a physician that on an examination of the
    prosecutrix six months after the alleged offense her hymen was
    found ruptured, was relevant and competent as tending in some
    degree to prove the crime charged in the information, and its ad-
    mission was harmless, in view of the verdict.

ID.—DECLARATIONS OF THIRD PERSON IN PRESENCE OF ACCUSED.—Evi-
    dence of declarations of a third person in the presence of the ac-
    cused, and of his conduct in relation thereto, is admissible.

ID.—ACTION OF DEFENDANT—ASSOCIATION WITH PROSECUTRIX.—Evidence
was admissible to show the action of the defendant and his asso-
ciation with the prosecutrix, and that he occupied a room which
was found locked.

APPEAL from a judgment of the Superior Court of Placer
County, and from an order denying a new trial. J. E.
Prewett, Judge.

The facts are stated in the opinion of the court.

J. M. Fulweiler, for Appellant.

U. S. Webb, Attorney General, for Respondent.

McLAUGHLIN, J.—The defendant was charged by the in-
formation with the crime of rape upon a female under the
age of sixteen years, and convicted of an attempt to com-
mit rape. The first point made in his behalf on this appeal
is that the crime of which he was convicted is not included
in a charge of rape, under subdivision 1 of section 261 of
the Penal Code, unless it is charged that the rape was ac-
complished by force and violence, and against the will of
the female. Section 1159 of the Penal Code provides that
"the jury may find the defendant guilty of any offense, the
commission of which is necessarily included in that with
which he is charged, or of an attempt to commit the offense."
Where a statute is free from ambiguity, there is no room
for construction. Courts are not at liberty to add to, or
subtract from, language susceptible of but one interpretation.
The meaning of this section is clear, and hence it must be
held that every information charging a public offense in-
cludes an attempt to commit the crime charged. In *People
v. Gardner*, 98 Cal. 128, [32 Pac. 880], the defendant was
charged with and convicted of an attempt to commit rape.
The information and proof were assailed as insufficient, but
the judgment was affirmed. We have examined the original
record in that case, and find that the information charged
an attempt to commit rape in language almost identical with
the descriptive portion of the information in the case at bar.
There was no mention of force, violence, assault, or want
of consent. That case is therefore express authority against
the contention of the applicant here, and we have neither

the inclination nor the right to depart from the rule thus announced. The subsequent enactment of section 288 of the Penal Code does not impair or affect the rule. Under this section, children, regardless of sex, are afforded protection from lewd or lascivious acts, not "constituting other crimes," and this clearly excludes the offense of which the defendant stands convicted.

It is contended that there is no evidence tending to corroborate the testimony of the prosecutrix, and that her evidence is so contradictory that the verdict should not be allowed to stand. It must be borne in mind, however, that in cases like the one at bar, the corroborative evidence need not tend directly to connect the defendant with the offense charged. Indeed, there is no absolute rule requiring corroboration in such cases. (*People* v. *Gardner,* 98 Cal. 130, [32 Pac. 880] ; *People* v. *Mesa,* 93 Cal. 584, [29 Pac. 116] ; *People* v. *Fleming,* 94 Cal. 311, [29 Pac. 647] ; *People* v. *Mayes,* 66 Cal. 597, [56 Am. Rep. 126, 6 Pac. 691] ; *People* v. *Stewart,* 97 Cal. 238, [32 Pac. 8].) It is only when the testimony of the prosecutrix is not only uncorroborated, but is so inherently improbable as to warrant the belief that the verdict was the result of prejudice, that an appellate court will reverse a judgment in cases of this character. (*People* v. *Benson,* 6 Cal. 221, [65 Am. Dec. 506] ; *People* v. *Hamilton,* 46 Cal. 540; *People* v. *Ardaga,* 51 Cal. 371.) We think no such condition exists in this case. The testimony of prosecutrix is supported by facts and circumstances of deep significance. Defendant was seen standing directly in front of this little girl with his arms around her. They were seen at different times with their arms around each other, and he was seen kissing and hugging her and acting "lovingly" toward her. They were noticed leaving the trail together and going sometimes six feet and sometimes a greater distance therefrom, returning in a "few moments or seconds." He told an officer for the prevention of cruelty to children that he could not keep her away, that she came there often, that her mother didn't care; that she sometimes came for the horse, and sometimes for something to eat. He also said that "the old lady had taken those children to the Chinamen for the purpose of prostitution." The mother testified that the girl frequently ran away, and went down

to the defendant's house, sometimes staying there all night. She also stated that on one occasion she saw the defendant and her daughter lying on the bed together. Another daughter testified that the prosecutrix had remained at the defendant's house seventeen or eighteen nights in all. The defendant admitted that she remained there all night on one occasion, but denied that at any time he kissed or hugged or had any improper relations with her.

It is apparent from the testimony of the girl that she was a reluctant witness. She admitted that she liked the defendant, and at first denied that he had done anything wrong with or to her. Only by the use of leading questions was she induced to tell the disgusting story of what he did while she was lying on her back in the barn. Omitting details, it is sufficient to say that her testimony was ample to prove that he not only attempted to, but that he did actually have sexual intercourse with her. It is said that most of the evidence tending to show guilt was unworthy of credence. This, however, was a matter for the jury to determine, and it is quite evident that they did not agree with counsel, who undoubtedly made the same point in argument before them. It is said in defendant's behalf that pity prompted him to allow the girl to come to his house, because she was half starved and ill-treated at home; that he bought shoes and clothing for her, and was in many ways her benefactor. But sinister motives frequently prompt such benefactions, and the jury had a right to view his gifts, in the light of other disclosures, not so worthy of commendation. The conduct of the mother stamps her as unfit to bear that honored and sacred title. But her faults cannot excuse defendant's conduct. He was thirty-five years of age, and, though a Chinaman, he must have known that the course pursued would inevitably subject him to suspicion and bring disgrace and shame to the girl. Children of her age cannot measure consequences, but he was old enough to know that she should be at her home, however poor its shelter might be, instead of walking and riding about with him. He must have known that to allow her to stay even one night in his house, would compromise him and ruin her reputation.

It is the humane and enlightened policy of our statute to throw the protecting arm of the law around our young

girls, supplanting the arm of the seducer. Men, whatsoever their nationality, are familiar with the terrible penalty entailed upon young girls by one false step. They cannot close their eyes to such consequences and disregard the warning voice of the law without risking the punishment the law imposes on their lust. They cannot indulge in suspicious and compromising conduct with females who are mere children, and expect that corroborative evidence supplied by such conduct will be treated lightly or held insufficient to support the story of the child victim. In the nature of things, direct corroborative evidence is seldom obtainable, and the prosecution must usually rely on the unsupported testimony of the child. This alone is sufficient; and, though it be contradictory and the corroboration slight, appellate courts will not interfere unless the preponderance of evidence against the verdict makes reversal a duty. (*People* v. *Kaiser,* 119 Cal. 458, [51 Pac. 702] ; *People* v. *Stratton,* 141 Cal. 609, [75 Pac. 166] ; *People* v. *Roach,* 129 Cal. 34, [61 Pac. 574] ; *People* v. *Allen,* 144 Cal. 300, [77 Pac. 948] ; *People* v. *Cesena,* 90 Cal. 383, [27 Pac. 300] ; *People* v. *Wessel,* 98 Cal. 352, [33 Pac. 216].) It could serve no useful purpose to indulge in a homily touching the testimony of the physicians, who stated that the hymen was ruptured when they examined her about six months after the occurrence in the barn. This evidence could have no bearing on the crime of which defendant stands convicted. Penetration is not an element of such offense, and this testimony only tended to prove sexual penetration. Hence, its admission was harmless, if erroneous, for the jury must have disregarded it in reaching a verdict. We think, however, it was relevant and competent as tending in some degree to prove the crime charged in the information. We cannot find evidence of the witness Healey as to declarations made by Ah Moon. As we read the transcript his evidence was confined to declarations made by defendant, but be this as it may, the declarations of Ah Moon in the presence of the accused, and his conduct in relation thereto, were relevant and competent. (Code Civ. Proc., sec. 1870, subd. 3; Pen. Code, sec. 1102.)

There was no error in permitting Mrs. Keeley and Frank Keeley to testify touching the actions of defendant and his association with the prosecutrix. We cannot find the

question upon which the fifth assignment of error is based. The court did not err in permitting the witness Jansen to testify touching the understanding as to the room defendant was to occupy. It was competent for the prosecution to show, if they could, that he was to occupy the room found locked on the occasion of Jansen's morning visit. The questions asked the prosecutrix, and excepted to by defendant, were calculated to throw light on the credibility of her testimony, and were favorable, rather than harmful, to appellant.

We deem it unnecessary to examine the instructions excepted to. Most of the objections were based on the premise that an attempt to commit rape was not included in the offense charged, and we have seen that this contention cannot be sustained. The instruction as to assault certainly did not harm appellant. It was more than favorable to him, and besides, he was not found guilty of assault. We find no error in the record.

The judgment and order are affirmed.

Chipman, P. J., and Buckles, J., concurred.