[Civ. No. 1184.   Third Appellate District.—March 13, 1914.]

SAMUEL SCRAGG, Respondent, v. HARVEY SALLEE,
Appellant.

Negligence—Automobile Collision — Action for Damages—Chal-
lenge of Juror.—In this action to recover for personal injuries
suffered by the driver of a delivery wagon through a collision with
an automobile, even if it were necessary to concede that a conflict

existed in the testimony addressed to the challenge of a certain juror for implied bias, and the court abused its discretion in denying the challenge, still the defendant is in no position to avail himself of the effect of such error, since it does not appear that, having exhausted the remainder of his four peremptory challenges after thus challenging the juror, he had occasion or desire to use an additional peremptory challenge.

ID.—COMPLAINT IN ACTION FOR PERSONAL INJURIES—NECESSITY OF SPECIAL PLEADING.—The plaintiff may testify, at the trial a little over a year after the accident, and under the general *ad damnum* clause of the complaint, that he has not entirely recovered from his injuries, as conducing to prove the pecuniary loss suffered by him, without a special plea that the injuries were permanent. The future and permanent effect of injuries directly or necessarily resulting to the plaintiff from the negligence of the defendant need not be specially pleaded in order to warrant proof thereof or recovery therefor. It is only damages which are not the necessary result of the injuries which must be specially pleaded.

ID.—ELEMENTS OF DAMAGES FOR PERSONAL INJURIES — MANNER OF PLEADING.—There are numerous elements which may enter into the whole of the damage which necessarily results from the infliction of bodily injuries. Among these is that of physical or mental suffering which the injured party has endured and will endure from his injuries, and it is not necessary in such a case to state separately the amount of the loss that is caused by each element of damage. A general statement of the whole amount of damage will suffice when all the damage claimed is the natural and ordinary effect of the injuries alleged.

ID.—SPEED OF AUTOMOBILE—TESTIMONY OF WITNESS REGARDING.—In an action by a driver of a delivery wagon to recover for personal injuries suffered through collision with an automobile, it is proper for a witness, in testifying to the speed of the automobile at the time of the accident, to state that he has never seen automobiles driven by others in that vicinity go any faster than the defendant was traveling at the time of the collision, and that he has seen other automobiles go at a pretty fast rate of speed.

ID.—ADMISSIONS OF DEFENDANT—SPEED OF AUTOMOBILE—ABSENCE OF WARNING.—In such action admissions of the defendant, made after the accident, that he was "going over the speed limit at the time of the collision," and that he did not "blow his horn" or give any other warning of his approach, are admissible.

ID.—SPEED OF AUTOMOBILE—VIOLATION OF ORDINANCE—NEGLIGENCE PER SE.—It is proper to instruct the jury in such case that ·the driving of an automobile over the streets of a city at a speed in excess of that limited by ordinance is of itself negligence, or negligence as

a matter of law, or negligence *per se,* which are equivalent expressions.

ID.—SPEED ORDINANCE—NECESSITY OF PLEADING.—It is not necessary for the plaintiff to specially plead such ordinance, but he may make proof of its violation by the defendant in support of the general allegations of negligence contained in his complaint.

ID.—PROXIMATE CAUSE—CONFLICTING EVIDENCE—REVIEW ON APPEAL.— Where the evidence is in sharp conflict upon the question whether the defendant's negligence was the sole proximate cause of the damage, or whether the plaintiff himself, by the manner in which he was driving his wagon, was so culpably careless as to have been the direct cause thereof, a reviewing court cannot say on which side the truth of the matter is.

ID.—EVIDENCE OF NEGLIGENCE — SUFFICIENCY TO SUSTAIN VERDICT.— There was sufficient testimony presented by the plaintiff, in this case, to justly warrant the jury in finding that the collision was precipitated wholly through the negligence of the defendant, and the appellate court is not justified in interfering with this finding, notwithstanding that the defendant's testimony, corroborated to some extent by that of other witnesses called by him, would amply have sustained the conclusion that the defendant was not, at the time of the collision, driving his machine at an excessive rate of speed, measured either by the terms of the ordinance or otherwise, that the plaintiff carelessly drove in front of the machine, and that but for such carelessness the accident would not have occurred.

ID.—VERDICT FOR PLAINTIFF—WHETHER EXCESSIVE.—The verdict of seven hundred and fifty dollars for the plaintiff in this case is not so excessive as irresistibly to lead to the conclusion that the verdict was the result of passion or prejudice, although his injuries were not shown to be of a very serious nature.

ID.—MEASURE OF DAMAGES—REVIEW ON APPEAL.—In actions for personal torts the law does not attempt to fix any precise rules for the admeasurement of damages, but from the necessity of the case leaves their assessment to the good sense and unbiased judgment of the jury; and appellate courts will not interfere in such cases, unless the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury, in reaching their verdict, were actuated by passion or prejudice.

ID.—LOSS OF WAGES—WHETHER SOLE CRITERION OF DAMAGES.—Compensation for personal injuries is not dependent upon the cutting off or diminution of wages by reason of the injury, nor is the amount thereof measured by the amount of income or wages lost; but the jury must take into consideration all the elements of damages shown by the proofs and apply their best and honest judgment in the ascertainment of what, under all the evidence, would be just compensatory relief.

APPEAL from a judgment of the Superior Court of Shasta County and from an order refusing a new trial. J. E. Barber, Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, and W. D. Tillotson, for Appellant.

Bush & Hall, for Respondent.

HART, J.—This is an appeal from a judgment entered upon a verdict for the plaintiff in the sum of seven hundred and fifty dollars, and from the order denying the defendant a new trial, in an action for personal injuries in which the complaint alleges that the damages sustained by the former through the negligence of the latter amounted to the sum of $5,018.00.

The injuries sustained by the plaintiff were received on the second day of April, 1910, in a collision between a delivery wagon, drawn by one horse, driven by him, and an automobile driven by the defendant. The complaint says that, on the evening named, the plaintiff was driving in a northerly direction on California Street, in the city of Redding, Shasta County, and that the defendant was, at the same time, driving his automobile in a westerly direction along Yuba Street, in said city; that at the intersection of California and Yuba streets the defendant's automobile ran into and collided with the delivery wagon of the plaintiff with such force that the latter was violently hurled from his wagon to the ground (striking on his head and shoulders, as we shall later see), whereby he suffered physical injuries the effect of which was to incapacitate him for the performance of the duties of his usual or customary employment for a period of fifty-one days, and required him to expend money for medical attention and medicine. It is alleged that the collision was the result of the carelessness and negligence of the defendant in running his machine at the time at an excessive rate of speed and in failing, on approaching the intersection of the streets where the accident occurred, to sound any bell, horn, or whistle or otherwise give any warning of the approach of the automobile.

The issues submitted to the jury were made by specific denials by the answer of the averments of the complaint and the charge that the accident and its consequences were caused by the plaintiff's own negligence, in that, by his carelessness and want of caution, he drove in front of the defendant's machine, and thereby negligently contributed to the cause of the injuries here complained of.

1. The first point urged in support of the claim that the cause should be remanded for a retrial is based upon the ruling of the court disallowing the challenge, interposed by the defendant of venireman W. L. Gay for implied bias. The defendant, it appears, used one of his peremptory challenges in removing Gay from the jury box and thereafter exhausted the remainder of the peremptory challenges to which he was entitled under the law.

The record upon the trial of the challenge of Gay shows that he repeatedly stated that he was not acquainted with either of the parties to this action, that he knew nothing of the facts or merits of the controversy, had no opinion and had expressed none with reference to the case, had no prejudice against automobiles, and that, if sworn to try the case, he could and would, by the aid of the law as given to the jury by the court, consider and decide the questions of fact submitted to him and his fellow-jurors with perfect fairness and impartiality. But, upon his examination by the attorney for the defendant, the fact was developed that, the day before going to Redding in response to the summons calling him to jury duty, he held a conversation over the telephone with one Middleton, who also had been summoned to serve on the same panel in the superior court, and that during the course of said conversation some reference was made to the present case. It appears that both Middleton and Gay resided a short distance from the county seat and in the same neighborhood. When asked what was said in the conversation between him and Middleton about the case, Gay explained that his purpose in calling up Middleton was to ask the latter if he could take him (Gay) to Redding in his (Middleton's) buggy; that thereafter the following conversation occurred between them: "He (Middleton) says, 'What is this case?' and I says, 'I don't know, but . . . I think it is an automobile running into a wagon,' and he says, 'I guess so,' or some-

thing of that kind. We were both speaking about being a little busy, and not wishing to serve or something of that kind, . . . and I says something about—I can't remember the exact words, but I says, 'What do you think about automobiles running around over the country . . . and their rights,' as near as I can remember, and he says, 'Well, I don't think they have any more right on the road than a wagon has.' '' The juror declared that the foregoing constituted, in substance, all that was said by either of them in the conversation referred to.

Middleton corroborated Gay as to the general nature of the conversation had between them at the time mentioned. He said that Gay asked him if he (Middleton) had any prejudice against automobiles, to which he replied, ''I don't think they (automobiles) had any more right to the road than a wagon had, or any other rig.''

But one Battams, on the trial of the challenge, testified that, at about the time at which Gay and Middleton admitted having conversed together as above indicated, he overheard a conversation carried on over the telephone between two parties, whose names or identity he did not then know; that said parties talked about being members of the jury panel and the case ''of a fellow in an automobile running into a man with a wagon''; that one remarked to the other, in response to a query as to what he thought of the case of a ''fellow in an automobile running into a man with a wagon'': ''I think a wagon has got as much right on the road as an automobile, and where the automobile runs into a wagon, on my part, I haven't much sympathy for the man in the automobile coming up to trial. I think where a man runs into a wagon with an automobile . . . he ought to be prosecuted.''

Gay, on further examination by counsel for defendant after Battams had testified, denied that either he or Middleton said in the conversation referred to that a person guilty of ''running an automobile into a wagon should be prosecuted.''

It will be observed that there can hardly be said that there is a conflict in the testimony touching the challenge of juror Gay upon the ground of implied bias. His own testimony, as we have shown, is to the effect that he was without an opinion upon the merits of the case, had no knowledge of the facts, knew neither of the parties to the action and had and

nourished no prejudice against the use of automobiles upon the public streets or roads and had never given expression to any such prejudice. The witness, Battams, it will be noted, did not say that it was Gay who said that a person who should run an automobile into a wagon ought to be prosecuted therefor, nor did he directly say that Gay, in the conversation to which he listened, assuming said conversation to have been the one carried on between Gay and Middleton over the telephone, said anything from which it could be inferred that he entertained a general feeling of hostility or prejudice against automobiles when used as vehicles upon the public highways. Battams merely declared that he heard one or the other, which one he did not know, say that a person who, driving an automobile on a highway, should run the machine into a wagon ought to be prosecuted. The court was justified in inferring that, if that remark was in fact made, it was more likely that it emanated from Middleton than from Gay, since, as the record shows, the former admitted, on his *voir dire* examination, that he had an opinion concerning the merits of the case which it would be difficult to remove by testimony or for him to lay aside. But, if it were necessary to concede that a conflict in the testimony addressed to the challenge arose by reason of Battams's narrative of the conversation overheard by him, still, the question whether the juror was thus shown to be disqualified was one the determination of which rested in the discretion of the trial court. And, furthermore, assuming that there is a conflict in the testimony addressed to the challenge, and that it may justly be held that the court abused its discretion in denying said challenge, the defendant is now in no position to avail himself of the effect of such error, since it does not appear that, having exhausted the remainder of his four peremptory challenges after thus challenging Gay, he "had occasion or desire to use an additional peremptory challenge, or that each and all of the twelve jurors finally accepted and sworn were not entirely satisfactory to him." (*People v. Schafer,* 161 Cal. 573, 576, [119 Pac. 920].)

2. The plaintiff, over objection by the defendant, was allowed to reply to the following question propounded to him by his attorney: "Have you or not entirely recovered from your injuries?" The answer to said question was: "I have not.

In the winter there, when it started to rain, it affected me just the same as rheumatism did, and drew my neck down and my neck got just as stiff.'' The trial occurred a little over a year from the date of the accident, and the specific ground of objection to said question was and is that it was intended and tended to show that the plaintiff had suffered permanent injuries, of which no claim is specially pleaded in the complaint, a requisite which counsel for the defendant contend must be observed in pleading a personal injury case to authorize proof of permanent injury. But we think that the testimony was competent, under the general *ad damnum* clause of the complaint, as conducing to prove the pecuniary loss suffered by the plaintiff from the injuries inflicted upon him by reason of the collision. The rule is that the future and permanent effect of injuries directly or necessarily resulting to the plaintiff from the negligence of the defendant need not be specially pleaded in order to warrant proof thereof or recovery therefor. *It is only damages which are not the necessary result of the injuries which must be specially pleaded.* (*Treadwell* v. *Whittier,* 80 Cal. 574, [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266] ; *Bonneau* v. *North Shore R. R. Co.,* 152 Cal. 413, [125 Am. St. Rep. 68, 93 Pac. 106] : *Castino* v. *Ritzman,* 156 Cal. 587, [105 Pac. 739] ; *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237, 253, [116 Pac. 513].)

There are numerous elements which may enter into the whole of the damage which necessarily results from the infliction of certain bodily injuries. Among these is that of physical and mental suffering which the injured party has endured and will endure from his injuries as the cause (3 Sutherland on Damages, sec. 945), and ''it is not necessary in such a case to state separately the amount of the loss that is caused by each element of damage. A general statement of the whole amount of damage will suffice when all the damage claimed is the natural and ordinary effect of the injuries alleged.'' (*Castino* v. *Ritzman,* 156 Cal. 587, [105 Pac. 739].) In the case at bar, the plaintiff himself testified that he did not claim to be permanently disabled as a result of the injuries sustained by him, and the testimony brought out in response to the question here complained of merely tended to show, not that he was permanently so disabled,

physically, as that his earning power was materially deteriorated, but that some of his injuries, influenced to some extent, it may be inferred from his answer to the question, by certain climatic conditions, still intermittently caused him to suffer physical pain and perhaps, as a consequence, some degree of mental anguish, an element which, as declared, it was proper to disclose to the jury under the general statement in the complaint of the aggregate damage, measured in money, directly resulting to him from his injuries.

3. The court overruled objections by the defendant to the following questions asked of the plaintiff, the first referring to a conversation he had with the defendant a short time after the accident: 1. "Did he say anything about he being in the habit of driving at a reckless speed through the streets of Redding?" 2. "Had you seen Mr. Sallee driving an automobile on the streets of Redding, previous to that time?" The rulings on the objections to the foregoing questions are asserted to be erroneous and the effect of the questions prejudicial to the defendant. But even if the questions were improper, the answers returned to them rendered them innocuous. To the first question, the plaintiff in effect replied in the negative, and to the latter he replied, categorically, in the affirmative, not attempting, however, to describe the rate of speed at which he had seen the defendant drive his machine on occasions prior to the time of the accident.

4. Exceptions 10 and 11 involve an attack upon the action of the court in permitting the witness, Shelton, over objections by the defendant, to say that he had never seen automobiles driven by others over the streets of Redding any faster than the defendant was traveling at the time his machine collided with the plaintiff's wagon, and that he had seen "other automobiles in the city of Redding go at a pretty fast rate of speed." The witness saw the defendant driving his machine toward the street crossing where the collision happened just prior to the accident, and had testified that the machine was then moving "unusually fast." In order to show that he was capable of forming an approximately accurate judgment of the rate of speed at which the machine was going, the questions now under consideration were put to him. There was no impropriety in the questions nor in the testimony brought out thereby. Their purpose was not to qualify the witness as an

expert upon the rate of speed at which the automobile was traveling when the collision occcurred (for the matter of the speed of vehicles traveling over the public highways does not involve scientific inquiries), but merely to show that the witness had habits of observation in noting generally the speed made by vehicles so traveling, and was, therefore, competent to give a more reliable estimate of the rate of speed at which the machine of defendant was moving at the time of the accident than otherwise he might have been. (*Kramm* v. *Stockton Elec. R. R. Co.*, 22 Cal. App. 737, [136 Pac. 523].)

5. Obviously, the court committed no error in allowing the witness, Bush, to detail a conversation had with the defendant subsequent to the accident and in which the latter stated (so the witness was permitted to say, over objection by the defendant) that, when his machine struck the wagon, it was "going at a speed of not less than fifteen miles an hour." The admission of the defendant so testified to was significant, not only because it tended to show that the speed at which the defendant was driving his machine at the time of the accident was such that it would be difficult to stop it in a sudden emergency, but also by reason of the fact that section 463 of the Municipal Code of the city of Redding, which was received in evidence, prescribes a penalty for driving an automobile over or upon the streets of said city at a greater rate of speed than eight miles an hour, or, when approaching a crossing of intersecting streets and crossing the same, at a rate of speed in excess of one mile in fifteen minutes. There is no more familiar or better understood rule of evidence than that which authorizes proof of the extra-judicial admissions or declarations of a party against his own interest as to the matter or question in issue. (Code Civ. Proc., sec. 1870, subd. 2.) What is here said is equally applicable to the claim of error noted in the exception to the ruling of the court permitting the plaintiff to state that the defendant, subsequent to the date of the accident, stated to him (plaintiff) that he was "going over the speed limit," and that he did not "blow his horn" or give any other warning on approaching the crossing because "he never thought of it."

6. The defendant asked the witness, Cummins, the owner of a garage and a dealer in automobiles, a number of questions the purpose of which was to secure from the witness his opin-

ion as to the probable effect of a collision of an automobile, of the weight and the power which the defendant's machine was shown to possess, going at the rate of ten or twelve miles an hour, with the rim of the rear wheel of an ordinary express wagon. The questions, having been objected to by the plaintiff, were disallowed, and the rulings are here assigned as errors. But the witness later on was permitted, without objection, to state fully his opinion as to the effect of such a collision upon the automobile, and the extent of the damage thus resulting to the machine, according to the opinion expressed by him, was amply sufficient to show to the jury what, under the circumstances, would most likely happen to the wagon. Thus, it will be noted that the error involved in the rulings foreclosing answers to the questions referred to, conceding but not deciding that the court thereby committed error, was cured.

7. Objection to the following question propounded to the defendant on his cross-examination was overruled and the ruling is here specified as erroneous: "Isn't it a fact that you have run your machine through the streets of Redding on numerous occasions at thirty and thirty-five miles an hour?" The defendant replied to the question in the negative, and whether the ruling thereon was right or wrong need not be decided, since the answer thereto was manifestly harmless or without prejudice.

The legal integrity of some other rulings of the court respecting matters of evidence is challenged, but an examination of said rulings has convinced us that the criticism directed against them is destitute of substantial merit.

8. The action of the court in giving, refusing, and modifying certain instructions is complained of. The only objection in this respect to which the defendant gives special attention in his briefs relates to the rejection of the instruction, as preferred by the defendant, which would have told the jury that the violation of a statute or city ordinance establishing a limit of speed beyond which vehicles of any kind may not be driven over streets or public highways does not of itself constitute negligence, but that an infraction of such a law merely constitutes evidence of negligence to be considered by the jury in connection with other evidence addressed to that proposition. The court, however, read to the jury the instruction after

modifying it, so that it declared, in substance, that the driving of an automobile over a street in the city of Redding at a rate of speed in excess of that limited by the ordinance of said city would of itself constitute negligence upon the part of the driver, and that "in such case it is not necessary that the plaintiff make any further showing of negligence on the part of the defendant, in order to recover, provided that such negligence is the proximate cause of the injury," and provided, further, that the plaintiff received the injury without fault on his part.

While it is undoubtedly correct to say that the act of driving a vehicle over a street or public highway beyond the speed limit established by a municipal ordinance or a statute merely constitutes evidence of negligence in cases where damage has followed the infraction of such an ordinance or law, the rule in this state is, however, that it is conclusive evidence of negligence. (*Siemers* v. *Eisen*, 54 Cal. 418; *Driscoll* v. *Market Street etc. Ry. Co.*, 97 Cal. 553, [33 Am. St. Rep. 203, 32 Pac. 591]; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, 519, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131, 139, 5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *James* v. *Oakland Traction Co.*, 10 Cal. App. 785, 799, [103 Pac. 1082].) Therefore, the statement that such an act is "of itself negligence," or "negligence as a matter of law" or "negligence *per se*" (equivalent expressions) is, in this state, strictly correct. It follows that the court made no mistake in modifying the instruction in the respect indicated.

We have not overlooked the cases arising in other jurisdictions (noted in vol. 2, sec. 1901, of Thompson on Negligence) and to which attention has been directed by counsel for the defendant, wherein it is held that, to constitute the violation of a municipal speed ordinance negligence as a matter of law, such ordinance must be pleaded, and that where in such case it is not pleaded, proof of the existence and of the violation of the ordinance amounts to no more than evidence of negligence, to be considered with other evidence received in the case upon that subject. The theory of that proposition is, obviously, that the plaintiff, not having pleaded the ordinance, does not rely upon it as the foundation of his right of action. The rule as so enunciated and applied, so far as we are ad-

vised, has never been recognized or applied in California. In practical effect the rule as thus enunciated would leave to the determination of the plaintiff, primarily, the question whether the violation of such an ordinance is negligence *per se* or only evidence of negligence. Manifestly, the violation of a municipal ordinance fixing the limit beyond which vehicles may not be driven over the streets of a city is, no less than the violation of a general act of the legislature upon the same subject, negligence *as a matter of law*. The only distinction which can be discerned between an ordinance and a general statute of the state dealing with precisely the same subject, so far as is concerned the effect of the violation thereof, lies in the proposition that, in the one case, as a general rule, the courts must acquire knowledge of the existence of the local regulation by means of affirmative proof thereof, while in the other the courts presumptively know and must take judicial cognizance of its existence. But *non constat* that the violation of the ordinance does not constitute negligence *per se* merely because the court in a case in which the question could arise has not acquired knowledge in a competent way of the existence of the ordinance. The result of the want of such knowledge by the court would only be to deprive it of the authority or right to announce to the jury that such violation is negligence as a matter of law. The rule adopted and followed in this state appears to be the more logical. It does not stop to make inquiry as to the particular nature of the negligence of which the defendant has been guilty and which has directly caused the damage complained of, but authorizes the plaintiff, where he relies for a recovery upon an act constituting negligence as a matter of law, to prove the act under his general allegations of negligence. In other words, if the negligence which was the proximate cause of the injuries complained of consisted of the violation of a municipal ordinance prescribing a maximum limit at which vehicles may be driven upon the streets of a city, then the plaintiff must first invest the court with knowledge of the existence of such ordinance, which he may do without having specially pleaded it, and then he may make proof of its violation by the defendant in support of the general allegations of negligence contained in his complaint.

9. The next assignment involves the question of the sufficiency of the evidence to justify and support the verdict.

The evidence is in sharp conflict upon the question whether the defendant's negligence was the sole proximate cause of the damage or whether the plaintiff himself, by the manner in which he was driving his wagon, was so culpably careless as to have been the direct cause thereof. In this state of the evidence, it is not, of course, up to a reviewing court to say on which side the truth of the matter lies. The plaintiff testified that he was driving his horse in an ordinary trot on California Street and going north; that the defendant, when he first noticed him, was driving his machine on the left-hand or wrong side of Yuba Street, going west; that the defendant was driving at a very rapid rate of speed—he judged at about the rate of twenty-five miles an hour; that when he first saw the machine it was approaching the intersection of the streets above named as he was making the same crossing. "I had no chance to do anything at all," he continued, "didn't have a chance to jump out, or jump, or nothing, and the machine struck me and sent me into the air." He was thrown to the pavement, striking, as before stated, on his head and shoulders. He arose, but immediately fell to the ground again in an unconscious condition, from which he was not revived until after having been removed to a drug store near by and treated by a doctor, who happened to be near the scene of the accident when it occurred. He testified that the defendant did not sound his horn or give any other warning on approaching the crossing. He further declared that, in the course of a conversation with the defendant a day or so after the accident, the latter admitted that, when his machine struck the plaintiff's wagon, he was driving it "pretty fast"—that he was "going over the speed limit." The defendant further stated to the plaintiff in that conversation, so the latter declared, that the reason he did not "blow his horn" was because "he never thought about it."

The witness, Bush, testified that the defendant, some days after the mishap, admitted to him that when the collision occurred, he was driving his machine beyond the speed limit as fixed by the ordinance.

Other witnesses, who were near the scene of the collision when it took place, testified that the machine was moving at

a very rapid rate of speed—some of them saying that, while they could hardly approximate the rate, they could say that the machine was going "unusually fast," while others fixed the speed at which the machine was going at between twelve and fifteen miles an hour. And some of the same witnesses corroborated the plaintiff's testimony that no warning was given by the defendant as he was nearing and in the act of crossing the intersection of the two streets.

Readily it will thus be seen that there was sufficient testimony presented by the plaintiff to justly warrant the jury in finding that the collision was precipitated wholly through the negligence of the defendant, and, as stated, with this finding we are not justified in interfering, notwithstanding that the defendant's testimony, corroborated to some extent by that of other witnesses, called by him, would amply have sustained the conclusion that the defendant was not, at the time of the collision, driving his machine at an excessive rate of speed, measured either by the terms of the ordinance, or otherwise, that the plaintiff carelessly drove in front of the machine and that but for such carelessnesss the accident would not have occurred.

10. It is lastly contended that the amount of the damages awarded by the jury, when compared to the character and extent of the injuries sustained by the plaintiff, is so excessive as irresistibly to lead to the conclusion that the verdict was the result of passion or prejudice. While it is to be conceded that the injuries suffered by the plaintiff were not shown to be of a very serious nature, still we cannot say that the award of damages is so excessive as to indicate that the jury, in considering the evidence relating to that feature of the case and in reaching a conclusion thereon, were influenced by passion or prejudice. It has been repeatedly said by the courts as well as the text writers that "in actions for personal torts the law does not attempt to fix any precise rules for the admeasurement of damages, but from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury," and that the appellate courts "will not interfere in such cases, unless the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury, in reaching their verdict, were

actuated by passion or prejudice.'' (*Aldrich* v. *Palmer*, 24 Cal. 513; *Wheaton* v. *North Beach & Mission R. R. Co.*, 36 Cal. 590; *Wilson* v. *Fitch*, 41 Cal. 386; *Harris* v. *Zanone*, 93 Cal. 59, [28 Pac. 845]; *Morgan* v. *Southern Pacific Co.*, 95 Cal. 501, [30 Pac. 601]; *Marshall* v. *Taylor*, 98 Cal. 55, 63, [35 Am. St. Rep. 144, 32 Pac. 867]; *Howland* v. *Oakland C. St. Ry. Co.*, 110 Cal. 513, [42 Pac. 983]; *Lanigan* v. *Neely*, 4 Cal. App. 760, 772; [89 Pac. 441]; *Clare* v. *Sacramento Elec. etc. Co.*, 122 Cal. 504, [55 Pac. 326]; *James* v. *Oakland Traction Co.*, 10 Cal. App. 785, 799, [103 Pac. 1082].)

The evidence shows that the plaintiff, while not confined to his bed or home during any period of time after he was injured, was nevertheless incapacitated for the proper performance of his accustomed duties, for which he received as compensation the sum of seventy dollars per month, for a period of nearly two months. It further shows that for a period of a year from and after the accident, he at times suffered pain in the shoulder which was injured as a result of the collision. Considering this evidence, we do not feel justified in saying that the verdict is excessive, or so far beyond a just admeasurement of the damages suffered by the plaintiff as to warrant the presumption that it was brought about otherwise than by a conscientious consideration of the facts by the jury. It is true that it can hardly be said that the plaintiff suffered any very serious detriment in so far as is concerned the loss of wages earned in the performance of the labor to which he had customarily applied himself; but, as the supreme court says in the case of *Clare* v. *Sacramento Elec. etc. Co.*, 122 Cal. 504, [55 Pac. 326], ''compensation for personal injuries is not dependent upon the cutting off or diminution of wages by reason of the injury, nor is the amount thereof measured by the amount of income or wages lost.'' The rule is, in brief, that the jury must take into consideration all the elements of damage shown by the proofs and apply their best and honest judgment in the ascertainment of what, under all the evidence, would be just compensatory relief. This, we must assume from the state of the evidence and the small amount (compared to the sum sued for) awarded to the plaintiff, is precisely what the jury did in this case.

We have found no just cause for disturbing the verdict for any of the reasons assigned, and the judgment and order are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.