(No. 6874.    May 27, 1941.)

STATE, Respondent, v. J. W. JONES, Appellant.

[113 Pac. (2d) 1106.]

Anderson, Bowen & Anderson, for Appellant.

Bert H. Miller, Attorney General, and J. R. Smead, Robert M. Kerr, Jr., and M. Casady Taylor, Assistant Attorneys General, for Respondent.

HOLDEN, J.—J. W. Jones was tried for the alleged

commission of the crime of statutory rape—having sexual intercourse with a female under the age of eighteen years —was convicted of an assault with intent to commit rape, and appeals.

It appears from the testimony of prosecutrix she was eating breakfast at a restaurant in Rupert at about seven o'clock in the morning of May 13, 1940, when appellant came in. Shortly thereafter prosecutrix and appellant met on the street, and he asked her where she was going, to which she replied she was going to visit some friends, and that he then volunteered to take her in his car. Thereupon she got into the car. After traveling a short distance prosecutrix informed appellant he was on the wrong road. He, nevertheless, continued to drive in the direction of Minidoka, about 15 miles from Rupert. Prosecutrix testified when they approached the village of Acequia, about half-way between Rupert and Minidoka, appellant stopped the car along the side of the oiled highway, took her pants off, forced her knees open and accomplished sexual intercourse; that appellant then gave her a drink of whiskey, took one himself and drove on to Minidoka; that when they arrived at Minidoka appellant stopped the car in front of the Sears Hotel, where he lived; that following an inquiry by prosecutrix as to where there was a bathroom, he replied there was one in the hotel or depot, took her by the wrist and the two went upstairs to his rooms; that appellant got some cornflakes and milk which they ate; that she again inquired about a bathroom and appellant showed her the one in the hotel; that when she came back appellant took off all her clothes, undressed himself, and threw her on the bed and again had sexual intercourse with her, after which appellant went to sleep and she dressed, took his watch, $2 of his money, his car keys, and went downstairs and left with the car.

It is earnestly contended the trial court erred in sustaining objections to questions asked prosecutrix on cross-examination as to how long it had been since she was home with her parents; what she did with defendant's watch; how long she had had the car before the officers came and got her; whether she saw her father and

mother and reported the alleged incident with appellant to them; where she had stayed the night before; how long it had been since she had stayed at home with her parents, to live with them; when was the first time she had told anyone about the trip with appellant; whether or not, since the complaint was filed, she told her parents appellant never did anything to her, and as to whether or not she talked with her parents after that.

This contention presents the question as to the latitude which should be allowed on cross-examination. In *Alford v. United States,* 282 U. S. 687, 692-3, 75 L. Ed. 624, 627-8, the U. S. Supreme Court held the permissible purposes of cross-examination, among others, are "that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased," that "counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general apply. (Citing cases.) It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. (Citing cases.) To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial" (citing cases).

In the Alford case, *supra,* a witness for the prosecution was asked on cross-examination "Where do you live?" In the case at bar the prosecutrix was asked a somewhat similar question, to-wit, how long it had been since she stayed at home with her parents to live with them. Discussing the right of the defense to so cross-examine, the court said:

"The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the

witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross examination may always be directed."

citing, by the way, among other cases, *State v. Fong Loon,* 29 Ida. 248, 255, 158 Pac. 233.

In *People v. Vaughn,* (Cal.) 21 Pac. (2d) 438, 441 (a case involving an eleven year old girl), the court says:

"The trial court also sustained an objection to an inquiry as to why the little girl did not complain to her aunt on the night of January 28 of defendant's abuse just committed, the record reading as follows:

'Q. He didn't say anything about not telling anybody? A. No.

'Q. Well can you tell me why you did not tell your auntie?

'Mr. Sullivan: Objected to as immaterial.

'The Court: Sustained.'

"It is our opinion that, if the query so propounded by defendant's counsel was not in the minds of the jury that tried this case, it should have been, and therefore an answer to the question should have been permitted. In the case of People v. Costa, 24 Cal. App. 739, 142 P. 508, the defendant, found guilty of ravishing a girl fourteen years of age, obtained a reversal upon rulings that excluded evidence bearing on the possible reason for withholding complaint for a period of two months, or until the prosecutrix came into the hands of the police. Incidentally, the record indicates that no complaint was made in the instant case until both these girls came to the attention of Juvenile Hall authorities. The Costa case and the present case present points of dissimilarity, but the opinion in that case contains comments which seem applicable to our problem (page 740 of 24 Cal. App., 142 P. 508): 'On cross-examination she was questioned as to whether she at the time said anything to her mother about the matter, when she first told her mother of what defendant had done, and whether she told any one about the matter, to all of which questions objections were sustained upon the ground that the evidence sought to be elicited was imma-

terial and not cross-examination. . . . ' Page 742 of 24 Cal. App., 142 P. 508, 509: 'The mere charge of an offense so heinous in nature is well calculated to arouse the feelings of the jury against the accused and excite its sympathy for the prosecutrix, particularly when the latter is a child of 14 years of age, thus placing the defendant, however innocent, at the mercy of her evidence. . . .' In People v. Baldwin, 117 Cal. 249, 49 P. 187, it is said: 'It will be sufficient to say, in a general way, that in a case of this character the very widest latitude compatible with our somewhat technical and restricted rules of evidence should be allowed the defendant in his cross-examination of the witnesses of the people. More especially is this true with reference to the prosecuting witness. In this class of prosecutions the defendant, owing to natural instincts and laudable sentiments on the part of the jury, and the usual circumstances of isolation of the parties involved at the commission of the offense, is, as a rule so disproportionately at the mercy of the prosecutrix's evidence that he should be given the full measure of every legal right in an endeavor to maintain his innocence.' "

See also: *State v. Warner*, (Utah), 13 Pac. (2d) 317; *State v. Brooks*, 181 Iowa 874, 165 N. W. 194; 70 C. J. 680, sec. 833.

When tested by the rule declared in the Alford and Vaughn cases, *supra*, it is clear the cross-examination of the prosecutrix in the case at bar was unduly restricted.

On cross-examination appellant's witness James P. Connors, was asked:

Q. "Have you interested yourself in the defense of this case?

A. I have.

Q. And have you interviewed a considerable number of persons?

A. I have talked with anyone that wished to talk about it.

Q. I will ask you whether it is true that have you or have you not interviewed one Bonita Winter of Burley?

A. I have.

Q. And state whether or not you said to her to forget

all about the liquor on Sunday and to say that she and Mrs. Blair spent Sunday night in the car with Jones as he testified on the preliminary that they did?

MR. DUNN: Now just a moment if the Court please, object to that as incompetent, irrelevant, immaterial; not binding on the defendant; no proper foundation laid; it is all too remote.

THE COURT: This is directed to this man's credibility and interest here as a witness."

Appellant assigns as error the overruling of his objection to the last question, asked for the purpose of laying a foundation to impeach the witness. This court held in *Hilbert v. Spokane International Railroad Co.*, 20 Ida. 54, 60, 116 Pac. 1116, that:

"It is gross error and subversive of substantial justice to allow a party to litigation to introduce exparte and extrajudicial statements not made in the presence or by the authority of the party to be bound, and it is equally erroneous to allow such questions to be asked by way of laying the foundation for impeaching the witness. Witnesses can only be impeached by proof of contradictory statements of a material fact."

In *State v. Bush*, 50 Ida. 166, 175-6, 295 Pac. 432, we held that where an impeachment question was improperly asked, objection that the question was incompetent, irrelevant and immaterial was sufficient to preserve defendant's rights on appeal; and further, that a witness may not be impeached upon an immaterial matter.

Furthermore, the question was also objectionable in that a proper foundation was not laid as required by Section 16-1210, I. C. A., which provides:

"A witness may also be impeached by evidence, that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. . . . "

While the cross-examiner included in his question a statement claimed to have been made by the witness to

Bonita Winter, he did not otherwise comply with the statute by fixing the time, place, or persons present when the statement was supposed to have been made. As held in *State v. Bush, supra,* before a question regarding prior inconsistent statements may be asked for the purpose of impeachment, statutory requirements must be observed.

■ Appellant was re-cross-examined as follows:

Q. "You say you hadn't used the car before this trip since the Fall?

A. I might have used it on one or two occasions in the last six months.

Q. When was the last occasion on which you used it?

A. I do not recall.

Q. When was the last occasion on which you used the car before this Sunday, the 13th?

A. I don't remember.

Q. On the 12th?

A. I don't remember.

Q. When, would you say?

A. I don't remember.

Q. Would you say it was a week before?

A. I don't remember that.

Q. Isn't it a fact, on the preceding Sunday, the Sheriff of this County and the Patrol Officer arrested you on a charge of driving that car while under the influence of intoxicating liquor?

A. That is not correct.

Q. And that you were not for some reason prosecuted on that charge?

A. I wasn't accused for that.

Q. You were not?

A. No.

Q. Do you remember whether you drove the car on the preceding week?

A. My wife and I went to Minidoka Dam on that day.

Q. The preceding Sunday?

A. Yes.

Q. You drove the car?

A. Part of the time.

Q. Were you arrested on that evening by the officers on that charge?

A. I wasn't arrested, no.

Q. But there was some conversation between you and the officers regarding your operation of that car while intoxicated was there not?

MR. DUNN: Just a moment, I object to that as not proper cross-examination."

Even if appellant had been arrested on the preceding Sunday on a charge of driving while under the influence of intoxicating liquor, it was a different offense in no way linked with the crime for the alleged commission of which appellant was on trial. In *State v. Garney*, 45 Ida. 768, 775, 265 Pac. 668 (a statutory rape case), it appears complaint was made of the action of the trial court in permitting a witness, Olive Butler (not the prosecuting witness), to testify to a different offense, to-wit, an alleged assault made upon her by Garney. We quote:

"The witness stated that she did not remember exactly when the assault was made but that it was sometime during the summer; that appellant came up and put his arms around her and made an improper suggestion, and she shoved him away; and that this conduct on the part of appellant was repeated on different occasions. This testimony was inadmissible, and prejudicial. It was in no way linked together with the offense for which appellant was on trial. There must be a causal relation or logical and natural connection between the two acts, or they must form parts of but one transaction. The general rule is, that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon trial, must be excluded." (See also: *State v. Miller*, 60 Ida. 79, 83, 88 Pac. (2d) 526.)

Appellant vigorously insists that while the evidence shows an opportunity to commit the crime charged it does not prove the crime was actually committed. In its facts *State v. Bowker*, 40 Ida. 74, 76, 79, 231 Pac. 706 (a statutory rape case), is very similar to the case at bar. There the facts, in substance, as stated by the court, were:

"that about 4 o'clock in the afternoon of that day [April 18, 1923] she [the prosecutrix] was on her way home and met appellant, who said he would take her there and save her the walk; that she got in appellant's car and they started in the direction of her home, but when they arrived within a block of the place appellant turned the car in another direction and proceeded to the foothills where he stopped and made known his purpose, and told her to 'come across' and that he would not take her home until she had done so; that she remonstrated with appellant and that he took hold of her hands and kept fooling with her until he had accomplished an act of intercourse with her, after which he brought her back and let her out of the car near her home. On cross-examination prosecutrix stated that she was very much enraged with appellant for what had taken place, but said that she made no complaint about the alleged assault until several days thereafter."

. . . . .

"A careful inspection of the record in this case fails to show any fact or circumstance tending to corroborate the testimony of the prosecutrix other than the fact that appellant invited her to ride with him, and instead of taking her directly to her home they drove some distance beyond there, and hence the opportunity for the commission of the offense was present. This does not constitute a sufficient corroboration under the rule announced by the authorities as to what is sufficient corroboration, and therefore the evidence is insufficient to support the verdict and judgment thereon."

In *State v. Short,* 39 Ida. 446, 450, 454, 228 Pac. 274 (another statutory rape case), it appears Short and prosecutrix, in company with two other boys and girls, went riding in an automobile, starting about 8 o'clock in the evening of December 25, 1921. Prosecutrix testified that while so out riding Short had intercourse with her in the back seat of the car during a period when the automobile was stopped. The court pointed out Short testified in his own behalf and that his testimony agreed in all respects with that of the prosecutrix, except as to the reason for stopping the car, the length of time they stopped, and

as to his action with respect to the prosecutrix. In the course of discussing the facts the court said:

"It is difficult to believe that a girl of fifteen would willingly permit her body to be defiled without protest and without immediate anger toward her seducer. She would have been expected to fight to the limit of her strength to prevent the outrage; ... ordinarily a girl so outraged would have informed her mother at once instead of waiting for three months. And while her submission to the outrage of her body constitutes no defense to the crime, if committed, we mention these things because the judgment cannot stand unless the circumstances clearly corroborate her statements. In such cases it is usual to introduce evidence as to the physical condition of the prosecutrix in corroboration of her testimony that her person was violated. There is an utter absence of any such evidence" (as in the case at bar).

"A letter was admitted in evidence written by Short to the prosecutrix, prior to the alleged crime, in which he remonstrated with her for some of the things which she had been saying to some of their friends and which closes as follows: 'Then you told Fat I was slow, well I'm tellin' you if I get you out again you'll think I'm a whirlwind, I ain't kiddin' you.' "

. . . . .

"It is not contended by the Attorney General, and surely cannot be by anyone, that the mere circumstance that this boy and girl were together on the ride and had, therefore, an opportunity to commit the offense constitutes the corroboration required in the Anderson case [*State v. Anderson,* 6 Ida. 706, 59 Pac. 180]; and to so hold would authorize a conviction upon the uncorroborated testimony of the prosecutrix aided only by evidence of an opportunity to commit the crime."

The State stresses the testimony of appellant to the effect "the defendant himself testified that he was in Rupert on the Monday morning in question, that he was in the places where the prosecutrix said she saw him, that she did travel with him in his car to Minidoka, that she did go upstairs into the hotel with him, that he did serve a bowl of cereal and milk as she testified, that she

was in his room a short time, and that he gave her some money [50¢, but not the $2 afterward taken by the prosecutrix] just before she left."

In the Short case, *supra*, Short also testified in his own behalf, the court pointing out that Short's testimony agreed in all respects with that of the prosecutrix except as to the reason for stopping the car, the length of time they stopped, and as to his actions with respect to prosecutrix. In this case, too, appellant's testimony likewise agrees with that of the prosecutrix as to the facts so stressed by the State except as to the reason for stopping the car between Rupert and Minidoka and as to what there occurred, and as to what the prosecutrix testified later occurred in his room. To repeat, this court held in the Short case that "an opportunity to commit the offense" does not constitute the corroboration required, "and to so hold would authorize a conviction upon the uncorroborated testimony of the prosecutrix aided only by evidence of an opportunity to commit the crime."

In support of the contention the prosecutrix was sufficiently corroborated the State further stresses the finding of a pair of bloomers in appellant's car by the deputy sheriff. In that connection, it is rather significant the State did not produce the pants which so came into its possession and have such pants identified by prosecutrix as being the same pair of pants she claimed appellant took off of her in the car, if, in truth and fact her pants were actually taken off in the car and there found by the deputy sheriff. Under the circumstances, unless produced by the State and identified by prosecutrix as being the same pants allegedly taken off her while she was in the car, the mere finding of a pair of pants in the car could not corroborate her. To corroborate, in any degree, the prosecutrix, it would be necessary to prove the pants found by the deputy sheriff belonged to her. Particularly so in view of the fact the former wife of appellant testified the pants belonged to her or her daughter, and prosecutrix was thereafter called to the witness stand but was not asked whether the pants found by the deputy sheriff belonged to her, and she did not testify they did.

In closing the discussion of appellant's contention that

while the evidence shows appellant had an opportunity to commit the crime charged against him, it is not sufficient to support a conviction, we think it fitting to direct attention to *State v. Baker,* 6 Ida. 496, 498, 56 Pac. 81, where, speaking of the character of the offense of (statutory) rape, this court quotes the following remark made by Sir Mathew Hale:

"It is an accusation easy to make, and hard to be proved, and harder still to be defended by the party accused, though ever so innocent."

Continuing, the court said:

"It seems a strange thing to say, but our experience almost compels us to the belief that, the more monstrous the crime charged, the more readily are juries inclined to give credence to it, and the less proof is required to establish it." (See also: *State v. Anderson,* 6 Ida. 706, 708-9, 59 Pac. 180.)

█ Complaint is also made of certain instructions given by the court. The instructions given, when read together, state the law correctly. However and inasmuch as the case is to be retried, we recommend the usual instruction be given to the effect that all of the instructions should be read and considered together; that no one of them states all of the law of the case, or states the law completely as to the whole case, but that all of them when taken together state the law which governs the case and which is to be applied to the facts, as the jury may determine the facts to be, and which must guide and direct them in their deliberation in arriving at a verdict.

It follows from what has been said that the judgment must be reversed and the cause remanded with directions to grant a new trial, and it is so ordered.

Morgan and Ailshie, JJ., concur.

GIVENS, J. (Dissenting)—Conceding the trial court should allow a liberal cross-examination of the prosecutrix in this class of cases as to any relevant, pertinent and connected circumstances which might modify, explain, contradict, rebut or make clear the examination in

chief, such cross examination is not to be unlimited in scope. (*People v. Burnette,* (Cal.) 102 Pac. 799.)

Appellant does not by his argument or analysis show how any testimony which might have been given in response to the questions on cross examination to which objections were sustained would have enlightened the jury on any material point vitally germane to anything brought out on direct examination, (*State v. Smailes,* 51 Ida. 321, 5 Pac. (2d) 540) would have materially established any defense, (*People v. Gidney,* (Cal.) 73 Pac. (2d) 1186) or disclosed any circumstances with regard to the prosecutrix pertinent to the defense not otherwise sufficiently proven.

It was clearly shown the prosecutrix made no complaint until arrested by the officers for the taking of appellant's watch and automobile. Failure to complain is no defense in statutory rape. (*Levy v. Territory,* (Ariz.) 115 Pac. 415; *People v. Martinez,* (Cal.) 210 Pac. 61; *People v. Jacobs,* 117 Pac. 615.)

The delay in making complaint and any effect thereof on the prosecutrix's credibility or animus was before the jury. Her parents testified for the defense fully as to conversations with her respecting appellant's conduct toward her.

Where she spent the night before was not touched upon in her examination in chief, and her whereabouts then is not shown to be of any probative value as to the claimed offense on the next day, or any defense thereto. (*State v. Morrow,* (Ore.) 75 Pac. (2d) 737.) Defendant in effect acquiesced in many of the adverse rulings. Not having demonstrated their prejudicial nature he has not shown such abuse of the discretion lodged in the trial judge in ruling on the admission of evidence as to require a reversal. (*State v. Thomas,* 47 Ida. 760, 278 Pac. 773.)

While appellant contends his statement to Mrs. Winters about the officers trying to bring a rape charge against him was made in reference to accusations of the officer Craig at a meeting in a shop in Rupert Tuesday the 14th, Craig denied having made any charge of misconduct until after prosecutrix was arrested three days later, and Mrs. Winters testified positively her conversation with appel-

lant was Monday evening the 13th. If he made this statement before the prosecutrix had made complaint to the officers or they to him, as the record discloses, it was absolute corroboration by the appellant himself of the girl's story, as no one else at that time, as shown by the record, knew anything about the claimed offense. The appellant and prosecutrix were undeniably together in the hotel at the time she said they were, and it was for the jury to decide the conflict between her assertions, which were not inconsistent, incredible, unreasonable or improbable (*State v. Alvord*, 47 Ida. 162, 272 Pac. 1010) of his insertions, and his denials. There was no material inconsistency in her recitals of the events of the offense and thus there was sufficient corroboration. (*People v. Ah Lung*, (Cal.) 83 Pac. 296; *People v. Gallagher*, (Cal.) 291 Pac. 626; *State v. Thomas, supra; State v. McPherson*, (Ore.) 138 Pac. 1076; *Valencia v. Milliken*, (Cal.) 160 Pac. 1086; *People v. Norrington*, (Cal.) 202 Pac. 932; *People v. Valencia*, (Cal.) 259 Pac. 361; *People v. Priddles*, (Ore.) 125 Pac. 904; *State v. Little*, (Wash.) 270 Pac. 103; *State v. Collins*, (Mont.) 294 Pac. 957.) The corroboration need be only of testimony not acts. (*State v. Smailes, supra.*)

That the first coition took place along side a public road was not so improbable as to discredit prosecutrix as a matter of law but was for the jury. (*State v. Penrose*, (Kan.) 84 Pac. (2d) 846.)

The jury clearly gave the defendant the benefit of all doubt by rendering a verdict of only assault with intent to commit rape, and the judgment should be affirmed.

Budge, C. J., concurs in this dissent.