[Civ. No. 3497.   Third Appellate District.—July 27, 1928.]

LOUIS SAPIRO et al., Appellants, v. G. A. FRISBIE
et al., Respondents.

J. LeRoy Johnson, Nutter, Hancock & Rutherford and A. P. Hayne for Appellants.

Lafayette J. Smallpage, Gilbert Jones and Charles H. Epperson for Respondents.

HART, Acting P. J.—This is the "companion" case to *City of Stockton* v. *Frisbie & Latta et al., ante,* p. 277 [270 Pac. 270], to which we have so referred in the opinion this day filed in the last-named case, and the appeal is from the judgment dismissing the action after demurrer sustained to the complaint without leave to amend. As stated in the opinion in Civil No. 3496, the two cases were submitted here for decision together or upon the same arguments and briefs, the legal points raised and urged in both cases, with the exception of one, being the same. The exception referred to involves the question whether the plaintiffs are entitled to claim and obtain damages for the injury which, it is charged, has been caused to their property by reason of the maintenance of the business of the defendants in the residence zone of the city of Stockton, in which zone the said property and the said business are, respectively, situated and maintained. This, therefore, is the only proposition to be considered herein, the questions involving an attack upon the constitutionality of Ordinance No. 858 of the city of Stockton having been considered and disposed of against the contentions of the defendants by the opinion in

Civil No. 3496, to which we will hereinafter refer as "the companion case."

The complaint in the present case is in two counts. In the first, Ordinance No. 858 is set out *in haec verba,* it being alleged therein that said ordinance was adopted and passed by the city council on the thirteenth day of November, 1923. The complaint describes the several steps required to be taken by the charter of the city of Stockton to effect legally the passage and adoption of ordinances for said city. The complaint further alleges that, on the seventeenth day of November, 1924, the city council of said city, after pursuing the preliminary course for adopting and passing ordinances for the city of Stockton, as required by its charter, adopted and passed an ordinance (No. 914) whereby Ordinance No. 858 was amended and thereby eliminated from section 3 the part thereof providing for a public hearing before the council on the application for a permit for the erection or alteration or conversion in a residence district of a building for the purposes of any business or industry, and in lieu thereof inserted a provision requiring such "proposed erection, alteration or conversion be approved by the city manager." The complaint further states that the plaintiffs are the owners of a "residence house" on Lot 4, Block 135, east of Center Street, fronting on Acacia Street, in said residence district, and that they are also the owners of another "residence house" on Lot 6, Block 135, east of Center Street, fronting on Acacia Street; that they have resided, still do reside and intend to continue to reside in the residence on said Lot 6, Block 135; that the "residence house" on Lot 4, in said block, and of which they are the owners, they have, at all times mentioned in the complaint, rented to tenants "who have been, and still are, living there"; that defendants, on or about the twenty-fourth day of June, 1927, without first obtaining a permit so to do as required by the ordinances referred to, "commenced the conducting of an undertaking business on Lots 1, 3 and 5, in Block 130, east of Center street," and "are now conducting an undertaking business there"; that the lots upon which the defendants are conducting said undertaking business are directly opposite Lots 4 and 6 of Block 135, upon which the two "residence houses" of the plaintiffs are located and used as above indicated; that the defendants, from the time (1st

of April, 1927) they commenced preparations for the conducting of an undertaking business on Lots 1, 3 and ·5, in Block 130, to the time of the commencement of this action, have maintained and ''still are'' maintaining a large sign on the front of their property ''and fronting on Acacia street, advertising said undertaking business'' on said property. The complaint proceeds:

''That in so conducting said business, said defendants are and will continue to house and embalm cadavers; to hold services over such dead bodies on the premises attended by mourners for said deceased persons; to accompany such services with doleful music; to carry the coffins containing the bodies of such deceased persons out of the front door to hearses standing in the street and to permit and cause the forming of funeral processions at their gates in said Acacia street and that frequent autopsies will be held and performed upon the said dead bodies and that large numbers of persons will constantly come and go to and from said establishment for the purpose of viewing said bodies and for the purpose of attending such autopsies and frequent ceremonies . . . ; that each and all of said incidents to the conducting of an undertaking business are and will be visible and audible to each and all of the inhabitants, occupants and residents on both sides of said East Acacia street for a distance of one block both east and west from its intersection with San Joaquin street, including plaintiffs; . . . that, by reason thereof, plaintiffs are and will continue to be, as aforesaid, greatly disturbed and depressed in mind and in spirit and the value of their said property as a residence will be totally destroyed and, as a result of the facts herein stated, it will be, if said undertaking establishment continues, impossible for plaintiffs to continue to occupy their said property as a residence, all of which damage will be suffered by plaintiffs in addition to the damage suffered by other residents of the neighborhood and the public in general . . . ; that plaintiffs, as aforesaid, are and will be especially and irreparably injured by the continuance of said undertaking establishment; that said undertaking establishment is in a residence district as defined by the said ordinance of the city of Stockton.''

It is further alleged that no application has ever been made by defendants for a permit to conduct said business

in said district and no permit ever granted to defendants by the city council for that purpose.

The second count of the complaint by reference incorporates therein all the allegations of the first count, and then alleges that "by reason of the premises plaintiffs have been damaged in the sum of $6,500, by reason of the depreciation in value of their property; that during the pendency of this action, plaintiffs will suffer damage in the further sum of fifty dollars ($50) for each month that said undertaking business is conducted as aforesaid."

The prayer is for an injunction perpetually restraining defendants from maintaining and conducting any undertaking business on the premises described in the complaint or the premises upon which said business is being conducted and for damages in the sum stated.

█ The point first made is that the plaintiffs "are not entitled to the relief of injunction." This point is supported by the same argument as that by which the same point was sought to be sustained in "the companion case," to wit: That an injunction will not lie to restrain the violation of an ordinance or a statute the infraction of which carries with it penal punishment; that, in such case, the law provides an adequate remedy in the penalty prescribed for the violation of the ordinance or statute. This proposition, as we have stated, was considered and held not to be maintainable, so far as the present case is concerned, by the opinion in "the companion case." A complete answer to the proposition, as it was given in the latter case, is that the ordinance involved in this controversy is not a "criminal" ordinance—that is to say, it contains no penal provision. The further suggestion, in connection with this point may be advanced, and that is that if it is the assumption here that an ordinance or statute prohibiting the doing of certain acts, without prescribing a penalty for the violation of its provisions, unless the acts in and of themselves are criminal, becomes *per se* a "criminal" ordinance or statute merely because such acts are prohibited, such assumption is fallacious. Crimes are either *mala in se* or *mala prohibita* and, as is obvious, an act, which does not itself involve moral turpitude or which is not in and of itself criminal, can become a crime —a misdemeanor—only where an ordinance or statute so denounces it. The ordinance in this case, as is pointed out

in the opinion in the companion case, neither expressly nor by implication denounces as a crime disobedience to its mandates. But, as also pointed out in the opinion in the companion case, there are exceptional circumstances which may exist in a case where a penalty is even prescribed for the violation of the provisions of an ordinance or a statute which would justify the interposition of the remedial power of a court of equity to prevent the commission of the acts thereby prohibited, the ground of such interposition being, of course, that the remedy at law (the mere imposition of a penalty) would be inadequate. This particular question, though, as we have stated, having been fully considered in the companion case, no further consideration and discussion thereof herein is really required or necessary; yet we may well take occasion to say that the cases cited by defendants upon the proposition are entirely different, so far as is concerned the situation as made by the facts, from the instant case, and are, therefore, not in point here. Those cases are: *Herald* v. *Glendale Lodge No. 1289, B. P. O. E.*, 46 Cal. App. 325 [189 Pac. 329]—the opinion therein having been written by former supreme court Justice Sloane when that learned jurist was a member of the court of appeal of the second district; *Dean* v. *Powell Undertaking Co.*, 55 Cal. App. 545 [203 Pac. 1015]—opinion by Mr. Justice Sturtevant. It will be perceived, upon a perusal of those decisions, that neither contains any statement at variance with the conclusion at which we have arrived herein. Indeed, in the case first named, certain cases are approvingly cited which hold that, while a complaint "having for its sole purpose an injunction against crime or misdemeanor will not lie," yet "it is just as well settled that equity will interfere if the alleged criminal acts go further and operate to the destruction or diminution of the value of property." (*Manderson* v. *Commercial Bank*, 28 Pa. St. 379.) In the case of *Dean* v. *Powell, etc., supra*, the plaintiff sued for an injunction to restrain the establishment in a residential district in the city of Fresno of an undertaking business. There was at the time no ordinance or any regulation in the city of Fresno excluding from such districts therein any business or industrial enterprise. The court, among other things, said:

"The appellant contends that it should not have been enjoined from conducting upon its own property a business in all respects lawful and in all respects operated with the highest degree of care and under the latest approved methods, solely and entirely because a few people living in the neighborhood believe that such business so conducted will hereafter cause them mental depression. In reply to this contention the respondents have stated they are entitled to the relief awarded and that their position is supported by authorities. They cite cases that arose in those jurisdictions where a statute or ordinance had been passed limiting the locations in which an undertaking establishment might be located. (*City of St. Paul* v. *Kessler*, 146 Minn. 124 [178 N. W. 171]; *Meagher* v. *Kessler*, 147 Minn. 182 [179 N. W. 732]; *Brown* v. *City of Los Angeles*, 183 Cal. 783 [192 Pac. 716].) As Fresno has not adopted an ordinance on that subject the cases are not helpful."

The judgment in that case granting the injunction was reversed upon the ground that there was no sufficient showing that the plaintiffs or their property would be damaged by reason of the maintenance of an undertaking parlor in the neighborhood where it was proposed to establish it. It must be kept in mind that, in those cases in which a statute or an ordinance makes it penal for anyone to violate its provisions, and where injunctive relief is granted as against those who have violated or threaten to violate the statute or ordinance, the injunction runs against the commission of the acts prohibited by the measure and not against the mere violation of the law, although, in point of fact, it must be conceded, such is its effect.

The right of the plaintiffs to claim and recover damages for any injuries which they may have sustained, and may sustain pending the final disposition of this litigation, by reason of any depreciation in the value of their real property caused by the acts with the commission of which the complaint charges the defendants, seems to us to be a proposition which is not subject to serious controversy. It is a well established and commonly recognized general rule that where a right is given by statute or municipal ordinance to a particular class of persons and for their special protection, and not merely for the protection of the public at large, a liability is thereby created in favor of any such

particular class as against any person who violates such right and as a result injures the person or property of the former, which liability may be enforced by means of a civil action or civil remedy appropriate to the circumstances peculiar to the particular case. This rule has been announced, approved, and applied in a number of cases. Many of these are listed in the footnotes to the case of *Wolf* v. *Smith,* 149 Ala. 457 [9 L. R. A. (N. S.) 388, 42 South. 824], and pages following. Excerpts from a few of those cases will readily suggest, if its mere statement be insufficient for that purpose, the good sense and justness of the rule.

In *Texas & Pac. Ry. Co.* (plaintiff in error) v. *Rigsby,* 241 U. S. 39 [60 L. Ed. 874, 36 Sup. Ct. Rep. 482], in which an award of damages at *nisi prius* in favor of the latter (an employee of the plaintiff in error) for injuries received as the result of the violation by the railway company of the Federal Safety Appliance Act (45 U. S. C. A. secs. 1–16), was sustained, the court, in its opinion, among other things, saying:

"A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Com. Dig., tit. Action upon Statute (F), in these words: 'So, in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.' (Per Holt C. J. Anon., 6 Mod. 26, 27.) This is but an application of the maxim '*Ubi jus ibi remedium.*'"

In 1 Corpus Juris, page 952, it is said, citing in the footnotes a large number of cases:

"It is a general rule that, wherever a statute imposes a duty for the benefit of particular individuals or classes of individuals, anyone within the benefit of the statute who sustains an injury by reason of a breach thereof has a right of action against the person guilty of the breach. This rule applies not only to statutory duties of public officers, but also to duties imposed by statute upon any citizen; and

the private right of action is not affected by the fact that the statute also makes such breach of duty a criminal offense, or the subject of a penalty, or by the fact that the statute which imposes the duty does not in terms prescribe any remedy for its enforcement or violation."

In *Wolf* v. *Smith, supra,* the plaintiff, while working in a mine, and actively engaged in the performance of the duties of his employment, received serious personal injuries, for which he sued for damages. His complaint was grounded upon a statute of the state of Alabama imposing upon the operator, agent or superintendent of each mine the duty of keeping at the mouth thereof, "or at any other such place about the mine as shall be designated by the chief mine inspector," a stretcher and certain other enumerated articles deemed by the legislature to be necessary for use in the carrying away of any person injured at the mine. The court, reversing the judgment made and entered after demurrer sustained by the court below, said:

"Manifestly the statute imposes the duty of keeping the articles and emollients mentioned for the benefit of those persons in the employment of the owner or person operating the mine who may be injured at or in the mines while in the performance of their duties as such employees. It is not a common law duty, but one newly created by statute, and which, but for the statute, might be omitted. No penalty is attached for a failure on the part of the person operating the mine to comply with the requirements of the statute; but it is a general and well-established rule that the wrongdoer is liable in damages to the party injured by the violation of a statutory duty. 1 Cyc. Law & Proc., p. 679. Neither does the statute provide a remedy for a failure to comply with its terms; but this presents no obstacle to recovery in a proper case against the wrongdoer. The common law affords the remedy, and, if the plaintiff has a cause of action, the proper remedy has been resorted to in this instance."

The *Wolf* v. *Smith* case, it is to be admitted, is, in the facts, different from the instant case, but the principle underlying it is the same. Its importance in the instant case is in the proposition that an action for damages will lie for injuries either to person or property as the direct result of the violation of a statutory right or duty.

The California cases of *Figone* v. *Guisti,* 43 Cal. App. 606 [185 Pac. 694] (opinion by Mr. Justice Langdon, now an Associate Justice of the supreme court, then Presiding Justice of the court of appeal, first district), *Siemers* v. *Eisen,* 54 Cal. 418, and *Wood* v. *Franks,* 56 Cal. 217, recognize and approve the same doctrine. In *Siemers* v. *Eisen* the injuries complained of were directly caused by a failure of the defendant to comply with the terms of an ordinance of the city and county of San Francisco requiring every person having or using any animal to securely fasten such animal before leaving it on the street, or where such animal was attached to a cart, dray, etc., to lock such vehicle before leaving the animal on the street.

As stated by counsel for the plaintiffs, it is true that many of the cases cited in the footnotes of 9 L. R. A. (N. S.) 338, *supra,* relate to actions founded on the theory that the violation of a statute constitutes negligence *per se,* or as a matter of law. That, of course, strictly speaking, is no less true even as to the present case. The statement that the commission of a certain act constitutes negligence *per se* is merely the statement of a rule of evidence. It means that proof of the commission of acts banned by statute raises the presumption of negligence—in some jurisdictions that the commission of such acts is of and in itself negligence, or negligence *per se,* and conclusive, while in other jurisdictions it has been held to be merely *some* evidence of negligence. In California it has been held in a long line of decisions that the doing of an act prohibited by statute is negligence *per se,* or as a matter of law. But we are not particularly concerned here with those questions, or the cases discussing them further than in so far as they consider and discuss, though in some incidentally only, yet nevertheless enlighteningly as to the present consideration, the principles upon which the instant case must be decided. This case does not rest upon negligence. Neither in point of fact nor of law was there negligence in the acts charged ·here against the defendants. The right of action in this case is based upon a wrong following from the breach of a statutory duty owing by all other persons to the plaintiffs as members of a class of persons for whose protection only the ordinance involved herein was and is designed. The following observations

from *Martin* v. *Herzog,* 228 N. Y. 164 [126 N. E. 814, 815], are quite pertinent to the present discussion:

"Whether the omission of an absolute duty, not wilfully or heedlessly, but through unavoidable accident, is also to be characterized as negligence, is a question of nomenclature into which we need not enter, for it does not touch the case before us. There may be times, when, if jural niceties are to be preserved, the two wrongs, negligence and breach of statutory duty, must be kept distinct in speech and thought. Pollock, Torts, 10th ed., p. 458; Clark & Linsell, Torts, 6th ed., p. 493; Salmond, Jurisprudence, 5th ed., pp. 351, 363; *Texas & Pac. Ry. Co.* v. *Rigsby, supra,* 241 U. S. 43 [36 Sup. Ct. Rep. 482, 60 L. Ed. 874]; *Chicago, B. & Q. Ry. Co.* v. *United States,* 220 U. S. 559 [31 Sup. Ct. Rep. 612, 55 L. Ed. 582]."

It will not be questioned that in California the rule above considered is applicable as well to city or county ordinances as to legislative enactments. (19 Cal. Jur. 632, 634; *Scragg* v. *Sallee,* 24 Cal. App. 133, 144 [140 Pac. 706]; *Figone* v. *Guisti, supra.*) In *Martin* v. *Herzog, supra,* it is in effect said that any such distinction which might be attempted to be made, or where such distinction has been made in some jurisdictions, as between legislative acts and local ordinances is illogical, to which statement we agree. "An ordinance, like a statute," said the court in that case, "is a law within its sphere of operation, so the distinction has not escaped criticism," citing other New York cases.

The proposition next to be considered in the present connection is: Was and is the ordinance in controversy designed to protect a particular class of persons, or the class to which the plaintiffs belong, or was its purpose for or is its necessary effect the protection of the public of the city of Stockton in general? We think that it is plainly apparent from the very nature of the ordinance that the class for whose immediate or direct protection the measure was designed consists entirely of owners of homes or other real property which must be used, if at all, for residence purposes in the residence zone or district. Owners of real property situated in the district are alone legally eligible to consent to the issuance of the permit mentioned in section 3. Such owners only may with legal force oppose or approve a proposition to establish and maintain a business or industrial enter-

prise within the limits of the district. Incidentally, or indirectly, it is true, the public in general may be *benefited* by the protection afforded by the ordinance to the owners of real property in a residence district, but it will not do to say that the general public as such, albeit such real property owners may be a part of such general public, will be *protected* thereby in the juridical signification of that term. Counsel for the defendants argue in their brief: "If it was intended that this ordinance should create an obligation between the applicant and certain of his immediate neighbors, it is not probable that the City Council would have permitted this obligation to be cancelled by petition signed by other neighbors, strangers to both parties." To which we, in the first place, answer, that the fact that the consents prerequisitely necessary to the issuance of a permit, if issued at all, to install a business in a residence district can come only from the owners of real property in the district itself supports rather than weakens the theory that such owners of such property constitute the class of persons, and the only class of persons, for whose special protection the ordinance was adopted. Secondly, it is to be observed, as we in effect suggested in the opinion in the companion case, that for the very reason, undoubtedly that nonresident owners of real property in the district might grant their consent for the issuance of a permit for purely selfish purposes or without regard to the better interests of resident owners of real property therein, the city council, in framing the ordinance, particularly section 3 thereof, was careful to reserve to itself the discretion of determining, after a public hearing of the application, or, if the amendment of section 3, as above indicated, is valid, in vesting the city manager with the same discretion, whether a permit should or should not be granted in any particular case.

Commenting on the cases cited by the plaintiffs, counsel for defendants say: "All of the cases cited by appellants are cases in which the ordinance or statute enacted an obligation between one person and another person, or class of persons, as distinguished from the general public. For instance, there are many cases providing for adequate protection of railway crossings, elevator shafts, etc. These are provided for the benefit of those who expect to cross the railroad and those who expect to be near the elevator shafts, and hardly

for the public in general." Many of the cases cited by the appellants, it is to be conceded, are interesting to the present consideration only in so far as that therein the principle governing cases of the character of the instant case is discussed and well expounded. This is true as to the "railway crossing and elevator shaft cases." We may remark, however, that the statutes considered in those cases prescribed regulations which were in the strictest sense for the benefit and protection of the general public. They were for the protection of any of the public at large that might find it necessary to cross railway tracks or use elevators. No one of the general public is excluded from the benefit of the protection afforded by those statutes. In the present case, as is obvious, no other persons than those owning real property in the residence district are given the protection afforded by the ordinance in question. Indeed, no one other than such owners of such property needs such protection. We thus refer to the cases mentioned by counsel for the defendants (the crossing and elevator cases) because they themselves stand as concrete illustrations of the distinction between statutes designed for the protection of the public at large or in general and statutes or ordinances intended for the protection of a particular class.

Concluding the present branch of the discussion, we emphasize the proposition that the right of the plaintiff herein to claim and recover damages for any damage they may have sustained or may sustain as a result of the acts of the defendants in doing that which the ordinance prohibits, proceeds, not from or upon the theory that the acts complained of constitute a common-law nuisance, but upon the theory that, the defendants having violated a right specially given to the plaintiffs by the law, and thus have caused damage to their real property, the latter are entitled to have redressed by way of compensatory relief the wrong so committed. It is true that the maintenance of certain businesses in a residential district contrary to the ordinance here is sometimes in the cases referred to as "near nuisances." This phrase is, perhaps, used as being the more apposite to describe a situation, such as is presented here, in which the theory is, not that the acts complained of constitute a common-law nuisance, but the wrongful invasion of a statutory right given to all of a certain class of persons, for which

wrong each member of such class sustaining damage to his property by reason of the commission of such wrong is entitled to compensatory as well as such other relief as may be necessary to his full and uninterrupted enjoyment of such right. But whatever may be in legal nomenclature a correct or the precise description of the wrong involved in the commission of acts prohibited by legislative measures of the nature of the one here, it is unquestionably true that, if the courts were required to hold that there is no civil remedy whereby compensatory relief for damage done to one's property as the result of such acts may be obtained, the reaffirmation by our code (Civ. Code, sec. 3523) of the common-law and common-sense doctrine that "for every wrong there is a remedy," would involve an idle declaration at least in some instances of civil wrongs to redress which no remedy is specially provided.

As to Ordinance No. 914, purporting to amend section 3 of Ordinance No. 858, as above explained, this is to be said: That, assuming that the purported amendment is unconstitutional and void, for the asserted reason that thereby an attempt is made to delegate legislative power to the city manager, in that it vests or attempts to vest in him the sole authority to allow or disallow exceptions to the operation of the prohibitory provisions of the ordinance, the result which follows is that the part of section 3 thus futilely attempted to be amended, remains or stands as it was framed in the first instance. There is no provision in Ordinance 914 expressly repealing the provision in section 3 purporting to be amended. If anything at all, the repeal of the provision, as it was originally framed, would be by implication only. "No repeal by implication can result from a provision in a subsequent statute, when that provision is itself devoid of constitutional force." (Endlich on Statutes, sec. 192; *Matter of Application of Clary,* 149 Cal. 732, 737 [87 Pac. 580]; *Ex parte Sohncke,* 148 Cal. 262 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 82 Pac. 956]; *McAllister* v. *Hamlin,* 83 Cal. 361, 365 [23 Pac. 357].) But equally applicable to this case is what is said in the opinion in the companion case to the effect that if section 3 of the ordinance is for any reason unconstitutional and void, the consequence is that there is no provision in the ordinance authorizing any exceptions to be made to the

operation of the prohibitory provisions of the ordinance, or authorizing the establishment and maintenance in any residence district in the city of Stockton of any business or industrial enterprise.

It follows, of course, from the conclusions at which we have herein arrived, that in any event—that is, whether section 3 be valid (no permit having been issued) or for any cause invalid—the defendants, in establishing, maintaining, and conducting an undertaking parlor in the residence district involved in the present controversy thereby committed and are committing acts in direct defiance of the prohibitory provisions of the ordinance, and that if, as the complaint charges, the real property of the plaintiffs has, by reason of the commission of such acts, been damaged or its value for residence purposes diminished, then they are entitled to the equitable relief herein prayed for and such compensatory relief by way of damages as the evidence may justly warrant.

The judgment is reversed.

Jamison, J., *pro tem.*, and Plummer, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 24, 1928.

All the Justices present concurred.