Larry **LEVINE;** Tom Kaptain; Scott Hart; and California Republican Assembly, **Plaintiffs,**

v.

**FAIR POLITICAL PRACTICES COMMISSION, Defendant.**

**No. Civ. S–02–199 LKK/DAD.**

United States District Court, E.D. California.

Sept. 23, 2002.

James V. Lacy, James V. Lacy Attorney at Law, Laguna Niguel, CA, for Plaintiff.

Lawrence Thomas Woodlock, Fair Political Practices Commission, Geoffrey Lloyd Graybill, Sacramento, CA, for Defendant.

## *ORDER*

KARLTON, Senior District Judge.

Plaintiffs seek a preliminary injunction barring enforcement of both Cal. Gov't Code section 84305.6 and subsection (a)(6) of Cal. Gov't Code section 84305.5, as it stood before it was amended by Proposi-

tion 208. They assert that the disclosure requirements of these provisions violate their right to free speech protected by the First Amendment to the Constitution of the United States. I resolve their motion on the pleadings and evidence filed herein and after oral argument.

## I.

## BACKGROUND

Over a number of years, the California Legislature has imposed various disclosure requirements on so-called slate mailers.[1] Prior to the passage of Proposition 208 in 1996, slate mail organizations were required to print the following disclosure in at least 8–point roman boldface type on each slate mailer:

NOTICE TO VOTERS

THIS DOCUMENT WAS PREPARED BY (name of slate mail organization), NOT AN OFFICIAL PARTY ORGANIZATION. Appearance in this mailer does not necessarily imply endorsement of others appearing in this mailer, nor does it imply endorsement of, or opposition to, any issues set forth in this mailer. Appearance is paid for and authorized by each candidate and ballot measure which is designated by an *.

*See* Cal. Gov't Code § 84305.5(a)(2)(prior to amendment by Proposition 208). In addition, Cal. Gov't Code § 84305.5(a)(6), as it stood before Proposition 208, prohibited sending a slate mailer unless:

Any candidate endorsement appearing in the slate mailer that differs from the official endorsement of the political party which the mailer appears by representation or indicia to represent is accompanied, immediately below the endorsement, in no less than 9–point

roman boldface type which shall be in a color or print that contrasts with the background so as to be easily legible, the following notice: THIS IS NOT THE POSITION OF THE (political party which the mailer appears by representation or indicia to represent) PARTY.

*See id.*

Proposition 208 amended Cal. Gov't Code § 84305.5. The above provisions were replaced by other slate mail disclosure provisions. The new provisions were ultimately found to be unconstitutional and their enforcement enjoined by this court. *See California Prolife Council v. Scully,* 96–1965, March 1, 2001 Order.

While Proposition 208 was being litigated, Proposition 34 was passed. Cal. Gov't Code § 84305.6, enacted by Proposition 34, reads, in pertinent part:

In addition to the requirements of Section 84305.5, a slate mailer organization ... may not send a slate mailer unless any recommendation in the slate mailer to support or oppose a ballot measure or support a candidate that is different from the official recommendation to support or oppose by the political party that the mailer appears by representation or indicia to represent is accompanied, immediately below the ballot measure or candidate recommendation in the slate mailer, in no less than nine-point roman boldface type in a color or print that contrasts with the background so as to be easily legible, the following notice: "THIS IS NOT THE OFFICIAL POSITION OF THE (political party that the

---

**1.** Generically a slate mailer receives a fee for preparing and mass-mailing to prospective voters brief documents, often 8½ × 11″ in size, supporting lists of candidates or proposi-

tions. *See infra* n. 2 for the statutory definition, and n. 3 for the statutory definition of a slate mailer organization.

mailer appears by representation or indicia to represent) PARTY."

*See id.*

The plaintiffs in this case have all published slate mailers as defined in Cal. Gov't Code § 82048.3.[2] As to all but the California Republican Assembly, it is uncontested that plaintiffs are slate mail organizations as defined by Cal. Gov't Code § 82048.5.[3] Each of the plaintiffs publish slate mail that targets either Democratic or Republican voters, and their mailers include captions that contain the words "Democrat," "Democratic," or "Republican," along with other symbols or references typically associated with such parties.[4] In their slate mail, plaintiffs have included, and represent that they will continue to include, the disclaimer set forth in Cal. Gov't Code § 84305.5(a)(2)(prior to amendment by Proposition 208).[5] They take issue, however, with the requirements of Proposition 34, as codified in Cal. Gov't Code § 84305.6, contending that it violates their First Amendment rights. Similarly, to the extent that defendant intends to enforce Cal. Gov't Code § 84305.5(a)(6) as it stood before Proposition 208, plaintiffs contend that this provision also violates their First Amendment rights. Plaintiffs ask this court to preliminarily enjoin defendant from enforcing sections 84305.6 and 84305.5(a)(6) against them.

## II.

## STANDARDS FOR ISSUING A PRELIMINARY INJUNCTION

■ The purpose of the preliminary injunction as provided by Fed.R.Civ.P. 65 is to preserve the relative positions of the parties—the *status quo*—until a full trial on the merits can be conducted. *See Uni-*

---

**2.** This section provides that a " '[s]late mailer' means a mass mailing which supports or opposes a total of four or more candidates or ballot measures."

**3.** This section defines a slate mail organization as:

[A]ny person who, directly or indirectly, does all of the following:
(1) Is involved in the production of one or more slate mailers and exercises control over the selection of the candidates and measures to be supported or opposed in the slate mailers.
(2) Receives or is promised payments totaling five hundred dollars ($500) or more in a calendar year for the production of one or more slate mailers.

**4.** Plaintiff Larry Levine, who publishes slate mailers through his organization known as "Voter Information Guide," printed a slate mailer in 1996 with the caption, "Voter Information Guide for Democrats." More recently, for the 2000 primary election, Levine's slate mailer was titled only "Voter Information Guide," and for each candidate, listed the different endorsing organizations, including the Democratic Party. Plaintiff Scott Hart publishes slate mailers through an organiza-

tion he controls known as "Continuing the Republican Revolution." His slate mailer carries this title, alongside pictures of former President Ronald Reagan or President George W. Bush. Plaintiff Tom Kaptain's slate mail organization, entitled, "Democratic Voters' Choice," published a slate mailer for the 2000 primary election that included on the front of the mailer the words "Vote Democratic" around a donkey logo, along with the statement that, "The Democratic Party was Established in 1823." The inside of the mailers, which contained the slate listing, had the headline "Our Democratic Team" or "The Team for Democratic Voters."

**5.** Whether, due to the fact that this court found Proposition 208 unconstitutional, this provision is now again in effect is a matter at issue in this litigation. If this court ultimately finds that this provision is not again in effect, the fact that plaintiffs represent that they will continue to conduct their affairs in accordance with this provision clearly would not bind them to do so. Accordingly, although the court considers that representation relative to this motion for a preliminary injunction, it is not clear that the representation would bear any significant weight in considering a permanent ban.

*versity of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The limited record usually available on such motions renders a final decision on the merits inappropriate. *See Brown v. Chote,* 411 U.S. 452, 456, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973).

■■■ "The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In the Ninth Circuit, two interrelated tests exist for determining the propriety of the issuance of a preliminary injunction. The moving party carries the burden of proof on each element of either test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1203 (9th Cir.1980). Under the first "traditional" test, the court may not issue a preliminary injunction unless each of the following requirements is satisfied: (1) the moving party has demonstrated a likelihood of success on the merits, (2) the moving party will suffer irreparable injury and has no adequate remedy at law if injunctive relief is not granted, (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction, and (4) granting the injunction is in the public interest. *See Martin v. International Olympic Committee,* 740 F.2d 670, 674–75 (9th Cir. 1984).

Under the second "alternative" test, the court may not issue a preliminary injunction unless the moving party demonstrates either "probable success on the merits and irreparable injury … or … sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting relief." *Topanga Press Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993) (citations omitted). The Ninth Circuit has explained that the two parts of the alternative test are not separate and unrelated, but are "extremes of a single continuum." *Benda v. Grand Lodge of International Association of Machinists,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). We are taught that the critical element within this alternative test is the relative hardship to the parties. *See id.* "[T]he required degree of irreparable harm increases as the probability of success decreases." *United States v. Nutricology Inc.,* 982 F.2d 394, 397 (9th Cir. 1992) (citations and internal quotation marks omitted). Even if the balance tips sharply in favor of the moving party, however, "it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *International Olympic Committee,* 740 F.2d at 674–75. (citation omitted).

### III.

### ANALYSIS

### A. JURISDICTION

The plaintiffs in this case sue the Fair Political Practices Commission, an arm of the State of California. It is established Eleventh Amendment jurisprudence, however, that this court lacks "federal jurisdiction over suits against unconsenting States." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Thus, before this action can proceed I must be satisfied that the State has consented.

To note that defendant has not objected to this court's jurisdiction on the basis of the Eleventh Amendment, while pertinent, is not the end of the matter. The test for determining whether a state has consented to this court's jurisdiction "is a stringent

one." *Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1117 (9th Cir.2000). A state waives its immunity when it "voluntarily invokes [federal] jurisdiction or ... makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." *Shulman v. California (In re Lazar)*, 237 F.3d 967, 976 (9th Cir. 2001). Such "clear declaration," however, need not be express. Rather, "a state 'waive[s] its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity.' " *Indus. Comm'n of Ariz. v. Bliemeister (In re Bliemeister)*, 296 F.3d 858, 861 (9th Cir. 2002) (quoting *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 758 (9th Cir.1999)).

▇ Here, while the defendant did not explicitly address the question of sovereign immunity, it did explicitly state that it did not dispute this court's jurisdiction. *See* Answer of Defendant Fair Political Practices Commission, filed February 13, 2002, at 2 ¶ 1; *see also* Defendant's Status Report filed April 19, 2002 at 2:18–19. These representations, along with the fact that the defendant has actively participated in this litigation, *see Bliemeister*, 296 F.3d at 861, are "incompatible with an intent to preserve immunity." *Id.* Accordingly, I find that defendant has consented to the jurisdiction of this court.

## B. JUSTICIABILITY

"Whether the question is viewed as one of standing or ripeness," before considering the plaintiffs' motion, this court must be assured that the plaintiffs face an actual injury. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.2000). To establish the requisite ripeness and standing for purposes of a preliminary injunction, plaintiffs must demonstrate that they will likely succeed in establishing "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id. See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation").

▇ Of course each plaintiff must demonstrate that it has standing to sue. In this regard, I note that it is uncontested that the California Republican Assembly is not a slate mail organization within the meaning of Cal. Gov't Code § 82048.5. It follows that it is not subject to either of the provisions that plaintiffs seek to enjoin. Accordingly, it lacks *standing* for purposes of this motion.

▇ As to all the other plaintiffs, it is equally uncontested that they are slate mail organizations within the meaning of the provisions at issue. It further appears that, due to the party references in plaintiffs' mailers, plaintiffs are likely to have these provisions enforced against them.

First, it is clear that, under defendant's interpretation, the party references in plaintiffs' mailers cause them to "appear[ ] by representation or indicia to represent" a given political party. Cal. Gov't Code § 84305.5(a)(6)(prior to amendment by Proposition 208); Cal. Gov't Code § 84305.6. Although defendant has not issued regulations[6] specifying the enforce-

---

**6.** The absence of regulations caused the court to inquire whether it should defer its decision pursuant to *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). The parties agree that, in the absence of a mechanism under which

this court could certify the issue to the California Supreme Court, such deference is inappropriate. *See California Prolife Council Political Action Committee v. Scully*, 989 F.Supp. 1282, 1288 (E.D.Cal.1998).

ment parameters for these provisions, a Fair Political Practices Commission ("FPPC") advice letter to non-party witness Fred Huebscher demonstrates that the defendant's position is that the mere use of the word "Democratic" in connection with a political candidate or proposition makes a mailer "appear[ ] by representation or indicia to represent" the Democratic Party.[7] Moreover, while defendant has pointed out that this advice letter is not binding, defendant would be hard-pressed to argue that it does not understand the provisions at issue to reach plaintiffs' mailers. Many of the slate mailers submitted as exhibits in support of defendant's opposition to plaintiffs' motion were published by the plaintiffs.[8] *See* Bowler Decl. and Exhibits; *see also* Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction at 3 (likening the plaintiffs' use of "the name 'Democrat' or 'Republican' or other indicia such as the donkey or the elephant" to fraudulent conduct enjoined by a district court in *Tomei v. Finley*, 512 F.Supp. 695 (N.D.Ill., 1981)).

Second, defendant has already taken steps that could lead to an enforcement action against one of the plaintiffs. After the March 2000 primary election, plaintiff Kaptain was contacted by the FPPC and informed that the FPPC wanted further information from him regarding his slate mailer in connection with an inquiry into whether he had violated Cal. Gov't Code § 84305.5(a)(6).[9] The investigation by the FPPC concerned the lack of an (a)(6) disclaimer in Kaptain's slate mailer, which contained references to the Democratic Party, after he endorsed a candidate who was different than the candidate endorsed by the Democratic party. While it appears that no probable cause or violation proceedings have been noticed against Kaptain or the other plaintiffs, "*Abbott Laboratories* does not require Damocles' sword to fall before we recognize the 'realistic danger of sustaining a direct injury' that is the heart of the constitutional component of ripeness." *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 (9th Cir. 2001). Rather, where plaintiffs face a dilemma in which they must choose between complying with burdensome restrictions or risk a credible threat of enforcement, the constitutional component of ripeness is satisfied. *See id.* In the First Amendment context, where the burdensome restrictions carry with them the danger of self-censorship, it is especially appropriate to find that the matter is ripe. *See Virginia*

7. Fred Huebscher is a publisher of slate mail. He consulted the FPPC in the year 1998 regarding his proposed mailer, in which "the only place 'Democratic' will be printed on the mailer ... is in the disclaimer mandated by section 84305.5 because the name of the slate mailer organization is California Democratic Alliance." Woodlock Decl. Exh. A, FPPC Advice Letter to Fred Huebscher, May 1, 1998. Under § 84305.5, the disclaimer would have read in pertinent part:

The FPPC informed Huebscher that this proposed slate mailer triggered the disclaimer provisions of Section (a)(6) because it would contain "indicia" of a political party due to the name, "California Democratic Alliance" in the disclaimer.

8. The defendants assert that the legitimate governmental purpose supporting the contested statutes is to eradicate fraudulent endorsements leading to confusion among the voters as to the position of the official parties. The slate mailers submitted were, *inter alia*, in support of, and asserted examples of, the need for such regulation.

9. Although, as discussed in the body of this order, *infra*, the continuing validity of subsection (a)(6) is at issue, for purposes of justiciability it is sufficient that the FPPC continues to view it as enforceable. Further, although the FPPC action arose in the context of subsection (a)(6) only, it is equally significant when considering the threat of enforcement of § 84305.6, as that provision is identical in every pertinent way to (a)(6).

*v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)("[T]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.").

Finally, I note that the prudential ripeness considerations set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) are also satisfied here. As is evident from the discussion below, a judicial decision may be made on an essentially legal basis. *See id.* at 149, 87 S.Ct. 1507. Likewise, as required for a preliminary injunction to issue, I explain below that the balance of the hardships falls upon the plaintiffs. *See id.* at 153, 87 S.Ct. 1507.

## C. LIKELIHOOD OF SUCCESS ON THE MERITS

█ As an initial matter, I note that plaintiffs may succeed on the merits in their challenge to Cal. Gov't Code § 84305.5(a)(6) on a statutory basis alone. While defendant may be able to establish that subsection (a)(6) was revived by virtue of the fact that the amendment to § 84305.5 was found unconstitutional by this court,[10] the plaintiffs would likely be able to establish that Cal. Gov't Code § 84305.6 repealed subsection (a)(6) by implication. *See Smith v. Mathews*, 155 Cal. 752, 758, 103 P. 199 (1909)(while an existing statute is not ordinarily abrogated by the enactment of a new one, it may be where the latter fully covers the whole subject matter of the prior). Moreover, even if defendant could demonstrate that § 84305.5(a)(6) were still effective, plaintiffs would nonetheless be likely to succeed

because § 84305.5(a)(6) suffers from the same constitutional defect that is present in § 84305.6, which I now address.

Section 84305.6 requires slate mail organizations, whose mailers "appear by representation or indicia to represent" a political party, to disclose such party's opposing view each time the recommendation on the mailer differs from that of the party. For example, if a Democrat-oriented slate mailer, falling within the purview of § 84305.6, favors Proposition X while the Democratic Party's Central Committee does not, the mailer must disclose that "this is not the official position of the Democratic Party," essentially advertising the party's negative position on Proposition X. Put directly, the statute does not merely require a disclaimer, rather it requires the mailer to articulate the position of the official party. As I now explain, however, such a requirement cannot pass constitutional muster.

█ It is well-established that a statute compelling speech, like a statute forbidding speech, falls within the purview of the First Amendment. *See Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)("The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind' "). The question here is whether the slate mail, by virtue of its status as paid political advertisements, or because of their potential to confuse or mislead the electorate, may nonetheless be constitutionally subject to § 84305.6's requirement of compelled speech. Defendant argues that because the slate mail publishers are paid, and because the object is to prevent confu-

___

10. Generally speaking, it appears that under state law, statutory provisions are not affected by a subsequent unconstitutional law. *See Lewis v. Dunne*, 134 Cal. 291, 299, 66 P. 478 (1901)(declaring an act unconstitutional, the California Supreme Court further explained that it was "void for all purposes, and is inoperative to change or in any way affect the law of the state as it stood immediately before the approval of said act"); *see also Sapiro v. Frisbie*, 93 Cal.App. 299, 312, 270 P. 280 (1928)(Ordinance stands in original form, where purported amendment thereof is unconstitutional).

sion, § 84305.6 warrants only limited scrutiny or, in the alternative, withstands strict scrutiny. I consider these contentions in turn.

■ First, assuming *arguendo*, that slate mailers are commercial speech,[11] or that § 84305.6 applies only to fraudulent mailers, it does not follow that a standard other than strict scrutiny applies. Rather, regardless of what type of speech or conduct [12] triggers the requirements of § 84305.6, there is no question that, once triggered, § 84305.6 compels specific speech with a political message contrary to that propounded by the slate mailer. Thus, § 84305.6 is a content-based regulation "operat[ing] as a command in the same sense as the statute or regulation forbidding [a person] to publish specified matter." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974)(holding unconstitutional a statute that required a newspaper to publish a rebuttal after it assailed the character of a political candidate). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the [disclosure requirement] as a content-based regulation of speech." *Riley v. Nat'l Federation of the Blind*, 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). Put directly, it is not the trigger

but the consequence, the compelled speech, which requires that § 84305.6 be subject to strict scrutiny.

Defendant argues that California has a compelling interest in protecting voters from confusion and fraud. *See, e.g., Burson v. Freeman*, 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (upholding prohibition on electioneering within 100 feet of the entrance to a polling place). As the plaintiffs point out, however, § 84305.6 is likely overbroad for this purpose. While fraud is a proper concern, it is far from clear what is meant by the phrase "appear by representation or indicia to represent" a political party. Assuming, however, that a narrowing construction could be imposed on this language, such a construction, as noted above, would only limit the type of speech or conduct that triggered the requirements of § 84305.6. The question remains whether the disclosure requirement of § 84305.6 is the "least restrictive means to further the articulated interest." [13] *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Clearly, it is not.

Present California law provides a less restrictive means for preventing a fraud on the electorate. *See* California Elections Code §§ 20006, 20007 (prohibiting false claims that a candidate has been endorsed by a party central committee, and permit-

**11.** *But see N.Y. Times v. Sullivan*, 376 U.S. 254, 265, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)("That the Times was paid for publishing the advertisement is as immaterial [as to whether the First Amendment applies] as is the fact that newspapers and books are sold.").

**12.** It is established that fraudulent speech is treated as conduct and thus its regulation is ordinarily not subject to First Amendment review at all. *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995)(distinguishing the permissible punishment of fraud from "indiscriminately outlawing a category of

speech"); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)("there is no constitutional value in false statements").

**13.** Because a narrowing construction would not be dispositive in this case, *Pullman* abstention is not warranted. *See Cedar Shake and Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir.1993)(citing *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941))(abstention warranted only where "a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court").

ting any member of the party central committee or any registered voter to bring an action in Superior Court to enjoin any such misrepresentation). Moreover, even if it were established that a compelled disclosure statement were indeed the least restrictive means to further the State's interest in protecting voters from confusion and fraud, the disclosure compelled by § 84305.6 goes beyond neutralizing the fraudulent or misleading aspect of the slate mailer. *Cf.* former Cal. Gov't Code § 84305.5(a)(2)(before amendment by Proposition 208)(requiring a disclosure that the mailer is not an official party publication and does not necessarily represent the views of a party).[14] Rather, § 84305.6 essentially forces slate mail publishers to give space to the opposing view. *Cf. Miami Herald Publ. Co., supra.* Because § 84305.6 does not appear to be the least restrictive means available to protect voters from confusion and fraud, it is highly likely that the plaintiffs in this case will prevail on the merits.

## C. IRREPARABLE HARM AND BALANCING THE EQUITIES

Plaintiffs have shown a high likelihood that the provisions at issue will violate rights guaranteed them by the First Amendment. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). It is further clear that, at this juncture, plaintiffs' injury is imminent. *See Hodgers–Durgin v. De La Vina,* 199 F.3d 1037, 1044 (9th Cir.1999)("the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief"). With the November 2002 elections on the immediate horizon, absent an injunction, plaintiffs will have to choose between self-censorship or the real possibility of an enforcement action by the FPPC. This harm outweighs any that would be suffered by defendant or the public by the issuance of a preliminary injunction. Although defendant's interest and the public interest in preventing fraud and voter confusion is legitimate, these concerns are mitigated by the disclosure provision that plaintiffs presently place on slate mailers, in combination with the enforcement options provided by California Elections Code §§ 20006, 20007. Furthermore, it is "in the public interest to terminate the unconstitutional application" of a statute. *Zeller v. The Florida Bar,* 909 F.Supp. 1518 (N.D.Fla.1995).

## E. BOND

No preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R.Civ.P. 65(c). Under the Rule, it is "well

**14.** Defendants argue that a disclosure such as that required by former Cal. Gov't Code § 84305.5(a)(2) cannot adequately protect voters from truly egregious mailers. That which is freely asserted, however, can be freely denied. Notably, defendant had no actual examples of such egregious mailers, and had to doctor one of the plaintiffs' mailers to show the court why the provisions at issue could be necessary. This hypothetical mailer states in large letters "Official Democratic Party Guide" on the front of the mailer, with a § 84305.5(a)(2) disclosure on the back stating that the mailer is not an official party publication. While it may be that the neutral disclosure of former § 84305.5(a)(2) would be insufficient to allay the confusion caused by the hypothetical mailer's blatantly untrue statement, *it is not clear that the § 84305.6 disclosure* would do so either. Moreover, as noted above, California Elections Code §§ 20006 and 20007 provide one example of a less restrictive means of addressing this kind of fraud on the electorate.

settled that Rule 65(c) gives the court wide discretion in the matter of setting security." *Natural Resources Defense Council v. Morton*, 337 F.Supp. 167, 168 (D.D.C.1971)(motion for summary reversal dismissed), 458 F.2d 827 (D.C.Cir.1972). *See also Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir.1954); *Doyne v. Saettele*, 112 F.2d 155, 162 (8th Cir.1940). In considering the appropriate amount of the bond, I note on the one hand that the only likely expenses which the bond stands for are the costs of suit, on the other hand, I note that plaintiffs are business people with some means at their disposal. Accordingly, bond is set in the amount of one thousand dollars ($1,000).

## IV.

## CONCLUSION

Based on the foregoing considerations, the court hereby makes the following orders:

1. Except as to the California Republican Assembly, plaintiffs' motion for a preliminary injunction is GRANTED.

2. Defendant is preliminarily ENJOINED from enforcing former Cal. Gov't Code section 84305.5(a)(6) and Cal. Gov't Code section 84305.6. against said plaintiffs.

3. Plaintiffs shall POST BOND in the amount of one thousand dollars ($1,000) within ten (10) days.

IT IS SO ORDERED.